OPINION OF THE COURT
Anne E. Targum, J.
This summary proceeding was brought by petitioner, the City of New York, to evict respondent tenant, Juanita Rodriguez, from apartment 5E at 2327 Valentine Avenue, Bronx, New York, pursuant to RPAPL 711 (1) on the grounds that the apartment was being used for illegal drug trade.
The proceeding was commenced after the Commissioner of Housing Preservation and Development received a letter from *468 the Bronx District Attorney serving notice that because respondent’s apartment was being used for an illegal drug trade, the Commissioner was required to take action to evict respondent; and further, that if he did not, or having done so, did not diligently prosecute the eviction proceeding, the Bronx District Attorney would bring such a proceeding in which respondent and the City of New York, as landlord, would be named respondents. The same letter advised that the illegal drug trade was evidenced by the arrest and conviction of Carmelo Cruz for selling drugs in front of the building at 2327 Valentine Avenue on April 7 and July 17, 1987. The letter further advised that at the time of these arrests and continuing to the present time, Carmelo Cruz resides in apartment 5E at 2327 Valentine Avenue.
At the trial of this proceeding, petitioner introduced in evidence certified copies of records of the New York City Criminal Court reflecting that Carmelo Cruz was arrested on April 7, 1987, and again on July 17, 1987, for the sale of narcotic drugs in front of the building at 2327 Valentine Avenue. The charges in both arrests were felony counts under sections 220.16 and 220.39 of the Penal Law. In each case, Carmelo Cruz pleaded guilty to reduced misdemeanor counts, and was sentenced in the first case to a fine of $500 (which he paid), and in the second case to probation for three years. The records consisted of the affidavits of the arresting officers and the certificates of disposition. The court was asked to and did take notice of the facts contained in each of the said records pursuant to CPLR 4520 which reads: "Where a public officer is required or authorized, by special provision of law, to make a certificate or an affidavit to a fact ascertained, or an act performed, by him in the course of his official duty, and to file or deposit it in a public office of the state, the certificate or affidavit so filed or deposited is prima facie evidence of the facts stated.”
Accordingly, note was taken of the following pertinent facts contained in the affidavits of the arresting police officers. The officer who made the first arrest swore in his affidavit that on April 7, 1987, at or about 1624 hours, he observed Carmelo Cruz in front of 2327 Valentine Avenue in possession of a narcotic drug which he saw him selling to two buyers, whereupon he was apprehended. The officer who made the second arrest swore in his affidavit that on July 17, 1987, at about 1220 hours, in front of 2327 Valentine Avenue, Carmelo Cruz sold one glassine envelope containing alleged heroin to an *469 other for a sum of United States currency, whereupon, both Carmelo Cruz and the buyer were arrested. These facts, coupled with the guilty pleas and the convictions set forth in the certificates of disposition, established prima facie proof of the drug activities alleged in the petition. None of these facts were controverted at trial.
Respondent tenant, Juanita Rodriguez, was represented at trial by Legal Aid counsel. She testified that Carmelo Cruz shared her apartment with her in a common-law relationship during the times of the aforementioned arrests and convictions; and that he continues to reside in the apartment. She denied that drug trade went on in the apartment, but she knew that Carmelo Cruz had been arrested for the sale of controlled substances, convicted on possessory charges and that he himself was a drug addict. She said of Carmelo Cruz: "I put him on Welfare”. But, she did not explain how he paid the $500 fine. Nor did she explain on what basis he was entitled to occupy an apartment in publicly subsidized housing.
Counsel for respondent argued that drug trade "in front of the building” did not establish drug trade "inside the apartment”, and that petitioner’s proofs failed to show that the apartment itself was used in furtherance of drug trade. This argument can have no merit when the applicable statute is examined closely with appropriate evaluation of the precise wording and the legislative intent underlying it.
RPAPL 711 (5) applies where "[t]he premises, or any part thereof, are used or occupied * * * for any illegal trade”. Use of the premises is specifically proscribed, separately and apart from occupancy. And the word "premises” should be accorded its appropriate meaning. The rights of tenants flowing from the basic occupancy of an apartment regularly extend beyond the apartment itself — to the public hallways of the building, the elevators, the roof, the lobby, the main entrance to the building, and adjacent recreational and parking areas — all held to be within the protection of the warranty of habitability. In fact, the dictionary (Merriam-Webster) defines premises as "a building or part of a building usually with its grounds or other appurtenances.” Premises has a considerably broader scope than apartment. And legislative intent to hold the occupant responsible for illegal activities outside the apartment itself is even more significant when the companion section RPAPL 715 authorizes a proceeding to evict for illegal *470 use, and occupancy to be brought by a petitioner "within [200] feet” of the building in which the offending tenant resides.
The activities of Carmelo Cruz "in front of the building” were not carried out in a vacuum. It is obvious from the arrest records that the building in question was well known as a place where drugs could be purchased. Cruz left the apartment to go to the front of the building, and he returned to the apartment from the front of the building. The "front of the building” is a sufficient nexus to his use of the apartment, just as illegal drug trade in other areas throughout a building was held to justify eviction of all tenants of the three floors of the brownstone building, despite their claims of noninvolvement, in Matter of Kellner (NYLJ, Nov. 26, 1986, at 11, col 6 [Civ Ct, NY County], and Weekly Realty Digest, NYLJ, Jan. 14, 1987, at 4, cols 3-6); and, just as the trade in prostitution outside the hotel building led to arrests "in and about the premises” in City of New York v Goldman (78 Misc 2d 693 [1974]) where the tenants’ arguments that they were not personally involved and that the illegal acts did not take place on their premises were rejected and did not save them from eviction, because, as the court pointed out (at 696), RPAPL 711 provides "a remedy for the illegal use of the premises, and it is sufficient if the acts and conduct complained of warrant the inference of acquiescence”. There comes a time, said the court (at 696), "when one must look and when he looks, he must see. Convenient indifference should not be confused with pardonable ignorance.” This court shares that court’s conclusion that "[t]he public is not blind and neither is the court.” (Supra, at 696.).
Another factor to be taken into consideration here is the "ill repute” of the building. In Matter of Kellner (supra, at 12, col 4), the court concluded that "[t]he burden of proof upon [p]etitioner * * * under RPAPL * * * 715 does not require proof of commission of specific illegal acts but rather proof of the ill repute of the demised premises or those resorting thereto shall constitute presumptive evidence of unlawful use”, citing City of New York v Goldman (78 Misc 2d 693 [1974], supra) and RPAPL 715 (1). Can there be any doubt of the "ill repute of the demised premises or those resorting thereto” in the case at bar? The ill repute of Carmelo Cruz was proven by his arrests and convictions. The ill repute of the demised premises was obvious from the fact that the building at 2327 Valentine Avenue was under police observa *471 tion as a place where illegal drug activity was likely to take place and where in fact it did take place.
Significantly, legislative intent in this area continues to be reflected in amendments to RPAPL 715 to broaden the scope of presumptive evidence, because direct evidence of illegal use is so hard to come by. The legislative memorandum which accompanied the 1976 amendment made specific and favorable reference to the presumptive reasoning of City of New York v Goldman (supra). (1976 McKinney’s Session Laws of NY, at 2348-2349.)
It is the conclusion of this court that petitioner has sustained its burden of proof by both direct and presumptive evidence.
Finally, there is no merit to the contention of counsel for respondent that the failure to serve a termination notice herein was fatal to the petition. In an illegal use proceeding under RPAPL 711, "no preliminary notice of termination is required.” (2 Rasch, New York Landlord & Tenant—Summary Proceedings § 1106, at 542 [2d ed].) This is because the proceeding, although denominated a holdover, is not based upon a holding over after expiration of a term, but upon "the * * * illegal use and occupation” of the demised premises. (Id., at 542-543.)
Petitioner is granted a judgment of possession against respondent, and any and all undertenants, and all persons leasing, using or occupying the premises herein. Warrant shall issue forthwith, and execution of the warrant is stayed 30 days.