OPINION OF THE COURT
Sheldon J. Halprin, J.
This summary holdover proceeding was commenced by the petitioner City of New York (hereinafter City) in November 1997 and was tried before this court on January 29 and 30, 1998. The petition states that it was brought pursuant to RPAPL 711 (1) and Real Property Law § 232-a. However, the preliminary notice, titled “Allegations”, stated grounds consisting of the alleged (illegal) use of the premises by the respondents for the sale of drugs. After trial, the City requested permission to file a brief on the issue of whether there are sufficient grounds, as a matter of law, to justify the eviction of corespondent Olufela Omolukum (hereinafter Mrs. Omolukum). Mrs. Omolukum, appearing pro se, filed opposition to the City’s brief. For the reasons set forth below, the court finds in favor of Mrs. Omolukum.
FACTS
Mrs. Omolukum has resided at the subject premises since 1986. She became a statutory month-to-month tenant when the City acquired the premises in an in rem tax foreclosure action. From mid-1990 through January 1996, corespondent *798 Joseph Pharr resided with Mrs. Omolukum as a licensee — he was her boyfriend. Mrs. Omolukum testified that her relationship with Mr. Pharr had deteriorated over time due to his escalating drinking and violent behavior. For these reasons, Mrs. Omolukum ejected Mr. Pharr from the subject apartment several times. She finally removed Mr. Pharr and all of his property from her apartment permanently on January 1, 1996. She testified credibly that although she occasionally continued to receive Mr. Pharr’s mail at her address, she would only give it to him “in the street”, and did not permit him to have either keys or access to her apartment or to the mailbox in the lobby. Mrs. Omolukum testified that her new licensee/boyfriend, Larry Moore, has resided with her at the subject apartment since September 3 or 4, 1996. Mr. Moore testified at trial and confirmed this. He also testified that they are still co-occupants of the apartment and that he has never seen Mr. Pharr in the apartment.
The City presented evidence that Mr. Pharr had been arrested and convicted for the sale of narcotics on three occasions. The arrest dates were October 22, 1996, November 5, 1996 and November 26, 1996. Petitioner’s preliminary notice marked “allegations” did not refer to the November 5 arrest, but evidence of it was introduced by documents submitted at trial. On the first occasion, Mr. Pharr was arrested on the corner of East 164th Street and Boston Road — in front of the subject premises. On the second and third occasions, Mr. Pharr was arrested in the lobby of the subject premises. On all three occasions, Mr. Pharr told the arresting officers that his home address was apartment 4B at 581 East 164th Street — Mrs. Omolukum’s residence at the subject premises. At trial, Mrs. Omolukum elicited on cross-examination that neither the arresting officers nor the New York Police Department detectives in charge of the neighborhood drug investigation had visited or contacted her to determine whether Mr. Pharr was living in her apartment at the times of his arrests. Mr. Pharr has been incarcerated since before the commencement of this proceeding.
At trial, the City attempted to present the elements of its prima facie case via documentary evidence and the testimony of one police officer. Mrs. Omolukum relied on cross-examination and on her own and Mr. Moore’s testimony. Given the facts stated here, the court was unsatisfied that the City had presented legally sufficient proof of its case-in-chief. Thereupon the City requested permission to file the aforementioned *799 brief on the issue of whether it was entitled to a judgment of possession for Mrs. Omolukum’s apartment as a matter of law. The court now finds that it is not.
DECISION
The first issue before the court concerns which standard of proof shall govern this proceeding. The City’s petition states that this matter is commenced pursuant to RPAPL 711 (1) and Real Property Law § 232-a. RPAPL 711 (1) authorizes the commencement of summary eviction proceedings against persons holding over in possession of premises after the expiration of their tenancy. This is clearly inapplicable since there is no claim that Mrs. Omolukum’s statutorily protected month-to-month tenancy had simply expired. However, RPAPL 711 (1) also authorizes the commencement of summary holdover proceedings against a tenant whom a landlord deems “objectionable” if the landlord can “by competent evidence establish to the satisfaction of the court that the tenant is objectionable”. Indeed, in its posttrial brief the City concedes that because Mrs. Omolukum is a month-to-month tenant in City-owned housing, she may only be evicted upon a showing of “good cause”. (157 W. 123rd St. Tenants Assn. v Hickson, 142 Misc 2d 984 [App Term, 1st Dept 1989].) The court notes that the City misstated this burden in its brief, asserting that in holdovers brought under RPAPL 711 (1) the City need only demonstrate a “rational basis” for the termination of a respondent’s tenancy. This is untrue and the City offered neither case law nor statutory language to support this proposition. The court reaffirms that “good cause for eviction” is the burden which the City must bear.
The sufficiency of that good cause is the second issue before the court. In determining this, the court must look at both the sufficiency of the predicate notice and the actual merits of the case. As to the former, Real Property Law § 232-a states that any month-to-month tenant of City-owned housing is entitled to 30 days’ notice of termination prior to the commencement of holdover proceedings. The City served the required notice here. It is well settled that where a holdover is commenced pursuant to RPAPL 711, “the tenant is entitled to a precise statement of the grounds and facts upon which the landlord relies in seeking an eviction”. (G.A.G. Enters. v Gonzalez, NYLJ, June 15, 1988, at 30, col 6 [Civ Ct, Kings County]; Cypress Holding Corp. v Nivar, NYLJ, July 19, 1989, at 20, col 2 [Civ Ct, Bronx County]; City of New York v Norman, NYLJ, *800 July 29, 1992, at 23, col 3 [Civ Ct, NY County].) As stated earlier, the notice herein (titled “Allegations”) contained claims that Mrs. Omolukum and Mr. Pharr were engaged in illegal drug sales on the subject premises and that Mr. Pharr had been arrested twice for this activity. Neither the notice nor the petition specifically state that this conduct is claimed to be “objectionable” within the meaning of RPAPL 711 (1). Indeed, a plain reading of the “allegations” indicates that the conduct complained of is more properly characterized as “illegal trade or * * * business” within the meaning of RPAPL 711 (5) — a statute not mentioned at all in the petition. Nonetheless, despite the distinction drawn in the statute between “objectionable conduct” and “illegal trade or business”, the courts have been loath to punish the City for technical inaccuracies of pleading in “drug holdovers”. To this end, it has been held permissible on several occasions to permit “illegal trade or business” pursuant to RPAPL 711 (5) to be read as “objectionable conduct” within the meaning of RPAPL 711 (1). (See, e.g., Fordham Bedford Renewal v Briham, 19 HCR 469 [Civ Ct, Bronx County]; One Tinton v Glynn, NYLJ, Nov. 16, 1988, at 23, col 4 [Civ Ct, Bronx County]; 2505 Bedford Realty Co. v Woodson, 152 Misc 2d 897 [Civ Ct, Kings County].) Inasmuch as no different standards apply to “illegal trade or business” when it is pleaded as such or when it is pleaded as “objectionable conduct”, the court finds that the predicate notice herein (titled “Allegations”) is legally sufficient.
The final issue before the court is whether there exists “good cause” to grant the City a judgment of possession for Mrs. Omolukum’s apartment based on illicit drug trafficking. At the outset it should be noted that at trial, the City did not claim that Mrs. Omolukum was personally involved in such activity. However, as the City points out in its brief, it is not necessary that a named tenant be personally involved in illicit narcotics sales in order for her to lose her apartment. (Riverview Apts. v Guzman, NYLJ, Feb. 13, 1991, at 21, col 2 [App Term, 1st Dept].) Neither is it necessary that such sales take place inside the subject apartment. (City of New York v Rodriguez, 140 Misc 2d 467 [Civ Ct, NY County 1988] [holding that sales which take place in front of an apartment building provide grounds for eviction].) Finally, the fact that the person who actually sold the illicit drugs no longer resides in the subject apartment does not abate the proceeding. (New York County Dist. Attorney v McDaniels, NYLJ, May 24, 1991, at 22, col 4 [Civ Ct, NY County].) However, where a named tenant is not claimed *801 to be personally involved in any illegal trade, the City must, as it concedes, demonstrate the existence of a “nexus” between such trade and the subject premises. (Marwyte Realty Assoc. v Valcarcel, 150 Misc 2d 1044 [App Term, 1st Dept].) In determining this, the court must inquire whether the evidence shows that “the acts and conduct complained of warrant the inference of acquiescence in an occupancy contemplating the prohibited purposes”. (City of New York v Goldman, 78 Misc 2d 693, 696-697 [Civ Ct, NY County 1974].)
In its brief, the petitioner relies on several cases to support its argument that the court should find a nexus to exist between Mrs. Omolukum’s apartment and Mr. Pharr’s drug sales. In City of New York v Gould (NYLJ, July 29, 1994, at 21, col 3 [App Term, 1st Dept]), the tenant’s eviction was upheld on appeal when her live-in boyfriend had been arrested one time for selling drugs in the lobby of their apartment building. In City of New York v Crosby (NYLJ, Feb. 24, 1995, at 30, col 4 [App Term, 1st Dept]), the same result was reached when the husband of the named tenant was arrested for a single sale of drugs in the lobby of their apartment building. At the time of his arrest, the tenant was in the lobby with her husband. Finally, in New York County Dist. Attorney v McDaniels (NYLJ, May 24, 1991, at 22, col 4 [Civ Ct, NY County], supra), the court permitted proceedings to continue against the named tenant — a mother whose son had been arrested for selling drugs — after finding that the son no longer lived in the subject apartment. Pursuant to the Goldman criteria, the deciding factor in these three cases is the existence of an “inference of acquiescence”. In Gould, the party who sold the drugs actually lived with and had a relationship with the named tenant. In Crosby, the party who sold the drugs was married to the named tenant. In McDaniels, the party who sold the drugs was a family member (a son) of the named tenant. The City urges the court that, like the situations in the cited cases, the evidence at bar points to the existence of an “inference of acquiescence” by Mrs. Omolukum of Mr. Pharr’s illegal activity. The court cannot make this finding.
From the close and ongoing relationships between the parties who sold the drugs in the cited cases and the named tenants, it can be inferred that the named tenants acquiesced in the illicit activity. The facts of this proceeding are different. Mrs. Omolukum and Mr. Pharr had and have no spousal or familial relationship. Although they did have a personal relationship at one time, Mrs. Omolukum testified credibly that *802 she had ended that relationship well before Mr. Pharr was arrested for selling drugs. The court believes Mrs. Omolukum’s assertion that she took all affirmative steps possible to remove Mr. Pharr and his property from her apartment. The court also notes that the City failed to investigate the situation or to present any evidence to counter Mrs. Omolukum’s testimony that she had removed Mr. Pharr from the apartment at the beginning of 1996 (long before the drug activity began). While he may have chosen to remain in the neighborhood or to enter the open lobby of the building, Mr. Pharr did not do so with Mrs. Omolukum’s assistance or consent. It would be unreasonable to impose the burden on Mrs. Omolukum to permanently banish her former boyfriend from the neighborhood. Although it is difficult if not impossible to completely sever a marital or family bond, one is certainly free to cut ties with one’s Mends or significant others if one so desires. Here, Mrs. Omolukum did just that. She presented sufficient and satisfactorily credible evidence of her actions to the court so that it could find that she never intended to acquiesce — either openly or tacitly — to the illicit drug dealing of her former boyfriend. Under these specific factual circumstances, the court declines to find the existence of the necessary “nexus” pursuant to Marwyte Realty Assoc. v Valcarcel (supra) and its progeny. Accordingly, the petition by the City for a judgment of possession is denied and this proceeding is dismissed with prejudice. The court notes in closing that it does not render this decision lightly. The court is aware of the strong policy considerations which favor permitting the City a free hand to evict tenants involved — even remotely — with the sales of illicit drugs. Such tenants are not merely a nuisance but a danger to their neighbors. However, the court feels compelled to listen when a tenant presents proof that she used all legally permissible means to rectify a bad situation, and does not feel that eviction is the proper response to her efforts.