Henderson W. Morrison, J.
This is a special proceeding to recover possession of real property pursuant to subdivision 1 of section 711 of the Real Property Actions and Proceedings Law.
Paragraph 16 (2) of the lease herein provides: “if Landlord or Landlord’s agents shall deem objectionable or improper any conduct on the part of Tenant or occupants, or visitors or licensees, or shall deem Tenant or occupants, or visitors or *774 licensees objectionable, Landlord may in like manner give to Tenant three days’ notice of intention to end the term of this lease and tender therewith or offer to tender the rent paid on account of the unexpired term, and thereupon at the expiration of said three days the term under this lease shall expire as fully and completely as if that day were the day herein definitely fixed for the expiration of the term, and Tenant will then quit and surrender the demised promises to Landlord.”
On February 9,1966, the landlord caused a notice to be served upon the tenant, the first paragraph of which stated that the ‘‘ landlord has elected and does hereby terminate on the 12th day of February, 1966, your tenancy”. (Italics supplied.) This court finds that this notice was timely and complied in all respects with the requirements of paragraph 16 (2) of the lease. The date of termination of the lease, three days hence, was clearly and unambiguously set forth.
The basis of this proceeding is the claim filed by the landlord that the tenant’s eight-year-old son has conducted himself and still conducts himself as a general nuisance, constituting a threat to the health, safety and general comfort of the other tenants in this large apartment house complex.
In support of this claim, petitioner’s employees testified to having observed respondent’s son, on May 4, 1965, throw a brick through a large plate glass window in the lobby of the building. On January 29, 1966, he was observed to have mutilated or defaced the lobby walls with snow and mud. He was observed going through the basement deliberately breaking six or more electric light bulbs with an umbrella. On three or four other occasions he was instrumental in causing the shower to overflow in the bathroom and leak down into the premises below which are occupied by another tenant as a commercial luncheonette.
While perhaps one or two of the foregoing incidents might have been attributed to the unfortunate results of a boyish prank, it must be remembered that petitioners are engaged in the business of renting some 154 apartments tenanted by persons seeking quiet, safety and the esthetic benefits of a finely decorated building for which they pay substantial rentals. When as here, the acts of wanton destruction increase to the point where they border upon vandalism, the landlord should not be unduly prevented by technicalities from asserting those rights which he needs must assert in order to protect his own interest as well as those of his tenants.
Concededly, an isolated instance of misconduct would not be sufficient upon which to predicate a proceeding of this nature. *775 (Matter of Twin Elm Corp. v. Banks, 181 Misc. 96; Hixson v. Leonard, 186 Misc. 379; Metropolitan Life Ins. Co. v. Moldoff, 187 Misc. 458; Di Lella v. O’Brien, 187 Misc. 922; Valley Courts v. Newton, 47 Misc 2d 1028.) However, where the misconduct as here, becomes persistent and continues, and there appears to be either a lack of desire or of ability on the part of the tenant to prevent or control the objectionable conduct, then these proceedings will and should lie.
The landlord has refused to accept rent for the months of February and March, 1966. The tenant contends on the one hand that the acceptance of rent for the prior months constituted a waiver by the landlord of any acts of misconduct that took place prior to the acceptance of such rent. On the other hand, the tenant argues that since only one act of misconduct occurred after the last payment of rent, the objectionable conduct does not meet the test of being “ continuous ” or “ frequent.” Not only does the lease in this case expressly provide that a receipt by the landlord of rent with knowledge of the breach of any covenant of the lease shall not be deemed a waiver of such breach, but to construe an acceptance of rent as a waiver of a violation when the law requires continuity before it will afford this remedy, would place the landlord in an untenable, unreasonable and unjust position. As was indicated by Judge Man cuso in Valley Courts v. Newton (47 Misc 2d 1028,1031, supra), even where the landlord has been unsuccessful in establishing continuity of misconduct, he may again use these same acts of misconduct as part of the basis for relief in a subsequent proceeding, should the misconduct persist.
While testimony was admitted during the trial as to the conduct of the respondent’s other son, this involved but a single incident on his part and has therefore been eliminated from consideration in making the conclusion reached herein.
Final judgment is granted in favor of the landlord on its petition to remove the tenant from possession and granting possession to the landlord, together with the costs and disbursements of these proceedings.