OPINION OF THE COURT
Peter Tom, J.
The sensitive issue raised in this summary holdover proceeding is whether a tenant has to forfeit her right to her rent-stabilized apartment when her daughters and an occupant are found to be selling narcotics from the premises.
Although the public praises the implementation of the *842 narcotics eviction program in the Civil Court, there is also a concern regarding evictions from residential premises of innocent family members including those who are senior citizens, disabled tenants and tenants with infant children, especially in light of the present acute housing shortage. This case deals with this troubling issue.
This proceeding was brought by petitioner against the respondents pursuant to a request made by the Manhattan District Attorney’s Office under RPAPL 715 on the ground that the subject premises are being used for illegal drug activity. Petitioner asserts that respondent’s lease is void pursuant to Real Property Law § 231 (1), and petitioner is entitled to recover possession of the apartment from all the respondents pursuant to RPAPL 711 (5) and Rent Stabilization Code (9 NYCRR) § 2524.3 (d).
During a “buy and bust” operation in the subject building in the early morning of September 23, 1988, an undercover agent witnessed what appeared to be a narcotics sales transaction in front of the subject apartment between one of the occupants of the apartment, Migdalia Albino, and another individual. The police officer announced his presence and entered the apartment. He saw what appeared to be bags of cocaine on the mantelpiece in the living room. In the kitchen, the police officer arrested another occupant, Oscar Haddock. There were numerous glossine envelopes of cocaine and a small amount of marihuana found on the kitchen table near Mr. Haddock. A loaded .22 caliber gun was found in the oven. Migdalia Albino and Oscar Haddock were both arrested. The tenant of record was found sleeping in bed in her bedroom. She was not arrested.
The tenant of record, Rosario Albino, is a 68-year-old woman who has lived in the subject apartment for 15 years. She was left with eight children to raise when her husband died in 1969. All of her children are now grown and have left the apartment with the exception of two daughters, respondents Yvonne and Migdalia Albino. Respondent Oscar Haddock is a friend of the daughters and was also living in the subject apartment during the time of the arrest.
Respondent Rosario Albino has appeared in court to defend this proceeding while her two daughters and Oscar Haddock have defaulted.
Mrs. Albino concedes that her daughter Yvonne is a drug addict but denies that she had any knowledge that narcotics *843 were being sold from the premises. Mrs. Albino testified that after the arrest of September 23, she requested her daughter Migdalia and Oscar Haddock to leave the apartment fearing that the illegal use of the premises would jeopardize her apartment. She also asked Yvonne to move out of the apartment on or about September 26. The two daughters and Oscar Haddock allegedly complied with her request and moved shortly thereafter.
Mrs. Albino testified that Migdalia returned to the apartment building in early March 1989 to retrieve her clothing. Oscar Haddock and Yvonne returned to the apartment on or about March 23 and 24 to take their personal belongings including certain furnishings.
During the early morning of March 24, 1989, the police again raided the apartment pursuant to a search warrant and arrested Oscar Haddock and Yvonne Albino. The police recovered a quantity of cocaine and heroin in plastic bags on top of a briefcase in the kitchen and located near Oscar Haddock. Respondent Rosario Albino was in bed when the police entered the apartment. She was not arrested.
Petitioner seeks in this case to evict all the respondents including the tenant of record, Rosario Albino.
Petitioner has clearly proven that the tenant’s two daughters and Oscar Haddock were selling narcotics from the premises and is entitled to a final judgment as against them. However, the issue in this case is whether Rosario Albino should also be evicted with the other occupants.
Although there was no evidence offered to show that Rosario Albino was involved, in any manner, with the narcotic transactions conducted in the subject premises, petitioner urges that under the facts of this case Rosario Albino was cognizant of and consented to the illegal drug activity conducted in her apartment.
A tenant is liable for the illegal acts committed in the leased property by the subtenant or occupant and is subject to forfeiture of the leasehold if the tenant had knowledge of and acquiesced to the use of the demised premises for such an illegal activity. (220 W. 42 Assocs. v Cohen, 60 Misc 983; W & E Realty Co. v Mantell, 191 NYS 220; Mandelbaum v Fromberg, 131 NYS 691; Hauer v Manigault, 160 Misc 758.)
The issue for this court to decide is whether Rosario Albino, under the evidence offered by petitioner in this case, must have known of the illegal drug activity conducted in her *844 apartment and thereby acquiesced to such illegal use of the premises. (Farhadian v Diaz, NYLJ, Feb. 26, 1990, at 23, col 4 [App Term, 1st Dept].)
An analysis of the evidence presented in this case does not support such a finding.
The unique aspect of this case which sets it apart from other narcotics eviction cases heard by this court is the fact that both police entries into the apartment took place at an unusually early time of the day. The police entered the apartment at approximately 6:50 a.m. on the first entry and approximately 7:00 a.m. on the second entry. During each of the unannounced police raids and at the time of the alleged illegal transactions, Rosario Albino was sleeping in her bedroom.
The fact that the two daughters and Oscar Haddock conducted their illegal drug trade at an early hour of the day when Rosario Albino was asleep is significant to show that they surreptitiously sold narcotics from the apartment outside the presence and knowledge of the tenant, Rosario Albino.
The narcotics recovered by the police on each of the two police raids were found in close proximity of Oscar Haddock. During the first incident, the police found Oscar Haddock in the kitchen with a number of glossine envelopes of cocaine on a table next to him. A loaded gun was also found in the oven near Mr. Haddock. During the second incident, the police again found a quantity of cocaine and heroin on top of a briefcase in the kitchen located near Oscar Haddock. Rosario Albino could not have seen the narcotics nor the gun since she was asleep in her bedroom when the police entered the premises. There are three bedrooms in the apartment and Rosario Albino’s bedroom is located next to the living room.
Besides the narcotics recovered in the kitchen near Oscar Haddock there were no other controlled substances found in open view anywhere else in the apartment. The bags of white powder found on the mantelpiece of the living room which were originally thought to be cocaine were tested not to be a controlled substance. The substance is faith powder purchased by Mrs. Albino from the botánica for religious practice.
The facts in this case are distinguishable from the facts in the Farhadian case (supra). In the Farhadian case, the police found overwhelming proof throughout the apartment of narcotics activity which could only lead to the conclusion that the tenant had knowledge of the illegal drug activity conducted in *845 the premises. There the police found large quantities of drug paraphernalia, cash and numerous firearms in the apartment. There was a safe which contained narcotics. The police officer characterized the premises as a "packaging location” and a "drug factory.”
In the present case, the only controlled substance found in the apartment was near the culprit, Oscar Haddock, located in the kitchen and outside the presence of the tenant, Rosario Albino.
The evidence presented by petitioner in this case does not lead to the same conclusion as found in the Farhadian case (supra).
Petitioner contends that the testimony of Rosario Albino as to her daughters and Oscar Haddock vacating the premises from September 1988 to late March 1989 as per her request was not credible. Petitioner argues that since the second police raid was conducted pursuant to a search warrant on March 25, 1989 there must have been further illegal drug activity in the apartment in the early part of March for a warrant to be issued. Therefore the occupants must have resided in the premises during the month of March.
Rosario Albino who speaks no English does not appear to be an educated or sophisticated individual nor a person with a sharp memory who can recall dates and events. Mrs. Albino is 68 years of age and suffers from hypertension and bronchial asthma. She regularly takes prescription medication including Tenoretic, K-Tab, Theodur and Motrin. She testified that she often feels drowsy and "dopey” after she takes the medication.
Rosario Albino testified that she did not see Oscar Haddock and Migdalia from September 1988 to March 1989 and that Oscar Haddock and Yvonne returned to the apartment on or about March 23 or 24, 1989 to pick up their belongings. She also testified that Migdalia was in the apartment briefly at the early part of March 1989.
If there was any inconsistency in the testimony of Mrs. Albino concerning dates, the inconsistency is more likely the result of Mrs. Albino’s age and health condition rather than her credibility.
The Appellate Term in the Farhadian case (supra, at 23, col 4) found that the tenant under the facts must have known of the illegal drug activity conducted in the premises and held that, " 'There comes a time when one must look, and when he *846 looks, he must see. Convenient indifference should not be confused with pardonable ignorance’ ”.
In the instant case, the evidence supports the finding of "pardonable ignorance” on the part of Rosario Albino whose present troubles have been caused solely by her drug-dealing daughters and companion. The only fault of Mrs. Albino is in raising two daughters who went astray and got involved in narcotics.
This court does not find that the eviction of a senior citizen who has no knowledge nor involvement of the illegal drug activity conducted in her apartment will further serve the purpose of the narcotics eviction program. If Mrs. Albino is removed from the apartment she may not be able to survive based on her present age and health condition. Rosario Albino receives a total monthly income of $411 from Social Security Widow’s Pension and Supplemental Security Income. Her monthly rent is $225.61.
Rosario Albino should be cognizant of the fact that if there is further illegal drug activity conducted in her apartment and the landlord brings a new proceeding, she will be evicted since she can no longer claim that she had no notice of the illegal drug transactions conducted in the premises.
It is hopeful that the threat of an eviction of Rosario Albino from the apartment will cause her two daughters to find some compassion and decency to stay away from the premises.
The attorney for Rosario Albino has arranged for a caseworker from the Institute for the Puerto Rican/Hispanic Elderly to assist Mrs. Albino with her needs. The court will further request the caseworker to assist Rosario Albino and work closely with her attorney to keep the two daughters and Oscar Haddock away from the subject premises.
Accordingly, the court grants a final judgment of possession in favor of petitioner against respondents Migdalia and Yvonne Albino and Oscar Haddock with issuance and execution of the warrant forthwith. The respondents are further directed not to enter the building known as 766 9th Ave., New York, New York. Petitioner’s causes of action against respondent Rosario Albino are dismissed.
The court also amends the caption of this proceeding to reflect the name of R. Albino to be Rosario Albino and "Jane Doe” to be Yvonne Albino nunc pro tune.