OPINION OF THE COURT
Anthony J. Fiorella, Jr., J.
Petitioner commenced this holdover proceeding in August of 1991 seeking possession of respondent’s premises, located at 1023 Avenue St. John, Bronx, New York, upon the ground that respondent has been engaged in or has knowingly permitted the use of his apartment by others for questionable purposes, i.e., excessive consumption of alcohol and possible use and sale of drugs. Petitioner further alleges that respondent’s conduct constitutes a nuisance, and is in violation of his proprietary lease, thus requiring respondent’s summary dismissal from the premises.
Petitioner’s notice to cure implies that respondent is allowing undesirables into his apartment who may be using drugs and consuming alcohol excessively which has interfered with the peace and quiet enjoyment of other tenants in the building. Although no specific details of drug activity are provided in the notice to cure, the court concludes that said notice is not infirm.
Particulars of alleged drug activity may not necessarily be within the specific knowledge of the petitioner or his witnesses, but may be broadly defined to infer circumstantially that some form of illegal activity may exist at the premises. Proof of such alleged activity need not be contained in the notice to cure, but such proof should be reserved for trial. Petitioner is not required to prove its case in its pleadings or preliminary notice but only to allege sufficient facts to generally support its cause of action. While the pleadings may not be specific, proof in whatever form shall conform to the pleadings. Thus, respondent’s motion to dismiss for want of specificity in the notice to cure is denied.
Respondent is a proprietary shareholder in this low income HDFC Corporation. He apparently resides with someone who allegedly has been referred to as his aunt, or simply an unidentified woman. Respondent has resided at the subject premises for approximately 5 to 6 years. Although represented by competent counsel throughout this proceeding, respondent appeared but did not testify at trial.
*143 Prior to the commencement of trial, it was conceded that respondent would not completely understand the nature of this proceeding nor understand petitioner’s allegations against his continued residency at the subject premises. In view of the foregoing, the court appointed a guardian ad litem, Miguel Santiago, to protect respondent’s interests not only in regard to the possible loss of his rights to his cooperative apartment but also as to any other mental impairments he may be experiencing which would severely restrict the maintenance of his independence. Regarding the latter, the court received into evidence a psychiatric evaluation of the respondent to determine his current mental and emotional status. The net result of this examination as reported by Dr. Pabis, Ph D. M.D., and Maria Malinowska, Ph D., is that Mr. Hernandez suffers from severe mental and emotional deterioration, is not able to work in any capacity and needs assistance in his daily functioning.
Petitioner presented six witnesses who testified that a number of unknown persons visit the premises at various hours of the day and night; they further claim that some form of illegal drug activity is going on in respondent’s apartment. Certain witnesses testified that they saw some form of drugs being brought into respondent’s apartment. Collectively, the witnesses testified that this type of conduct has existed for more than a year on a continuing basis. In August of 1991, approximately 50 tenants forwarded a letter of complaint to petitioner stating that the respondent had been found intoxicated on a few occasions next to his apartment and that drugs were being sold on the premises. Witnesses further testified that voices coming from his apartment were not necessarily that of the respondent. Two of the witnesses saw a blonde woman exchange money for a brown bag and return to respondent’s apartment. Although they did not see an actual exchange of drugs, the witnesses concluded that such was the case since they have seen this same woman in the neighborhood associating with known drug dealers. All the witnesses testified that this particular neighborhood is an area of heavy drug traffic.
Ms. Martinez testified that her family is awakened at all hours of the night by transients entering respondent’s apartment and that the visits are accompanied by fights and yelling. She further stated on two occasions she was confronted with knife threats by the respondent. Gladys DeJesus testified with particularity that she saw a stranger enter respondent’s apartment with a key and that she saw this *144 same individual approach a car and exchange money for a small bag which she recognized, based on the totality of the circumstances, as being a drug transaction. When asked specifically by the court as to the basis of her conclusion, she stated that the neighborhood was filled with drugs and had seen similar transactions on other occasions with people who are known drug dealers in the area.
Estaban de la Paz testified that his son’s ex-wife, whom he knew to be a drug abuser, was a frequent visitor of the respondent. He claimed to have argued with this woman concerning the foregoing in respondent’s presence.
Respondent’s sole witness at trial was Perotta Tulio, who is employed by Bronx Legal Services, as a process server. He stated that he visited the building where respondent resides for an hour or so on three different occasions. He stated that he observed no illegal activity at respondent’s apartment and did not observe any crack vials in the hallway. Since this witness had neither the training for drug investigation nor did he observe the subject premises for any extended period of time, the court found his testimony inconclusive.
Predicated on the psychiatric evaluation from St. Mark’s Place Institute for Mental Health, Inc., it cannot be seriously argued that the respondent (who did not testify at trial) was fully cognizant and knowingly acquiesced in these activities. If anything, it would appear that he may have been a pawn in the hands of the other occupant in the apartment.
APPLICABLE LAW
Petitioner’s burden of proof that a tenant is using an apartment for illegal trade, specifically the sale and distribution of narcotics (RPAPL 711 [5]), is not always sustained by clear and convincing evidence. (Farhadian v Diaz, NYLJ, Feb. 26, 1990, at 23, col 4 [App Term, 1st Dept].) In that case the court held that the uncontradicted evidence indicated that during the course of the arrest at the premises the police confiscated large quantities of drug paraphernalia, cash, and numerous firearms; further evidence retrieved from the premises were bags containing additional drugs and drug paraphernalia. The arresting officer characterized the premises as a "packaging location” and a "drug factory”. The fact that tenant was not present at the time arrests were made at the premises was not dispositive.
In the case at bar, although the foregoing descriptive evi *145 dence was not found at respondent’s premises, the absence of such direct proof should not reduce the credible testimony of petitioner’s six witnesses who are all residents of the same building and who live in close proximity to respondent’s apartment. Building residents and their families should not be disturbed or live in fear while pursuing their rights as law abiding tenants to the peaceful and quiet enjoyment of their homes. They should be free from the serious, questionable activities in respondent’s apartment which continue to have a stringent and unfavorable impact on their daily lives.
Landlord should not be unduly restricted by technicalities from asserting those rights which he needs to assert in order to protect his own interest as well as those of his proprietary lessees. Concededly an isolated instance or even a few instances of misconduct would not be sufficient to predicate a proceeding of this nature. (190 Stanton v Santiago, 60 Misc 2d 224; Valley Cts. v Newton, 47 Misc 2d 1028.) However, where the misconduct or use of the premises for illegal use becomes persistent and continues, and there appears to be either a lack of desire, or lack of ability or knowledge on the part of the cooperative lessee to prevent or exercise proper control of the objectionable use and conduct, then these proceedings will and should lie. (Matter of Kaufman v Hammer, 49 Misc 2d 773, 775.)
The term "use” of the premises for illegal purposes implies doing of something customarily or habitually upon the premises. The evidence, therefore, should reveal customary and habitual illegal use of the premises by the tenant. (Estate of Shaff v Stein, 171 Misc 376.) The evidence by landlord (one conviction of tenant for possession of policy slips) here fell short of establishing such use. (Lituchy v Lathers, 35 Misc 2d 556.)
In the case at bar, the use of respondent’s apartment for alleged illegal drug activity or consumption has continued for over one year. It is inconceivable to conclude that the facts of this case could be described as an isolated or rare occurrence of misconduct which would warrant a dismissal of this proceeding. (Cf., 14th St. Assocs. v Henderson, NYLJ, Mar. 23, 1979, at 6, col 1.) Clearly petitioner’s witnesses have substantially demonstrated that this misconduct or objectionable conduct constitutes a pattern of continuity or recurrence which subjects respondent to eviction from the premises. (Tompkins Sq. Neighbors v Zaragoza, 69 Misc 2d 301, mod 73 *146 Misc 2d 126, revd 43 AD2d 551, appeal dismissed 34 NY2d 737; Matter of Park E. Land Corp. v Finkelstein, 299 NY 70.)
Nuisance, as generally defined by case law, is understood to be more than isolated instances of misconduct or general annoyance. A nuisance is a condition which conceivably threatens the conduct and safety of the building occupants (Novak v Fischbein, Olivieri, Rozenholc & Badillo, 151 AD2d 296, 299; 2 Rasch, New York Landlord and Tenant — Summary Proceedings § 30:60). If the key to this definition is a pattern of continuity or recurrence of objectionable conduct (see, Valley Cts. v Newton, 47 Misc 2d 1028, supra), respondent appears to have met that criteria. The safety and domestic tranquility of the other tenants in the building demand the protection of the law in the form of a possible eviction of the respondent whose conduct and lack of control over the current situation may encourage the nuisance to continue unabated. (Frank v Park Summit Realty Corp., 175 AD2d 33 [1st Dept].)
Residential tenants are the eyes and ears of the landlord in many situations. Responsible tenants take pride in the building and their residences. When reduced building security adversely impacts individual residences and family members, tenants will convey their feelings to the landlord in any given situation in order to obtain relief from a perceived threatening situation. Through their proof petitioner’s witnesses have stated with certainty that the immediate and surrounding area of the subject premises has been infested with drug addicts, drug sales and prostitutes. These activities and establishments threaten the security, economic potential and appearance of a neighborhood and community which is indeed struggling to survive this onslaught. The fact that the neighborhood has experienced some deterioration over the years should not be construed as a license for anyone to permit a bad situation to become exacerbated.
Appellate courts have distinguished those cases which warrant the forfeiture of the subject premises from those which have fashioned relief other than forfeiture. In Lexington Ave. Props. v Charrier (NYLJ, Jan. 29, 1986, at 11, col 5 [App Term, 1st Dept]), the court concluded that the conduct complained of represents a pattern of behavior engaged in over two years. The court stated at the very least respondent’s conduct which included an assault was such as to " 'interfere substantially with the comfort and safety of the landlord or of other tenants’ within the meaning of the Rent Regulations so as to warrant a termination of this tenancy”. (See also, Gros *147 feld Realty Co. v Lagares, 150 Misc 2d 22; Farhadian v Diaz, NYLJ, Feb. 26, 1990, at 23, col 4, supra.) Concluding, the court stated that we deem it inappropriate to subject the landlord and other tenants to further jeopardy or abuse. In the above case, landlord was awarded a final judgment of possession. In contrast, forfeitures are generally abhorrent to the law and will not be declared if there is any reasonable theory upon which a case can be settled. Continuation rather than the extinction of grants is favored. (220 W. 42 Assocs. v Cohen, 60 Misc 2d 983; 500 W. 142 St. v Reyes, 11 AD2d 990.)
In determining the appropriate remedy to be applied herein, the court has carefully reviewed respondent’s psychiatric report referred to above. The report indicates that respondent was hospitalized in Jacobi Hospital from 1985 to 1990 in the psychiatric ward. Without detailing the deficiencies confronting respondent, suffice it to say he is well below normal intelligence and shows signs of seriously impaired range of memory and intellectual functioning. His prognosis for recovery is poor given the fact that he continues to experience mental and emotional disorders and hallucinations. The report concludes that he is disoriented to time and place and is unable to take care of himself. The prevailing evidence adduced at trial without serious objection, together with the respondent’s psychiatric evaluation, persuade this court that respondent’s summary removal from the premises at this juncture is not warranted. Common sense and reason dictate an alternative solution should be temporarily adopted to initially afford respondent the opportunity to obtain medical and psychiatric care. Conceivably, Mr. Hernandez will respond favorably to such treatment, thus providing him with a new lease on life.
This relief is conditioned solely on respondent’s obtaining proper medical treatment and that the activities in his apartment cease and desist. Should the aforedescribed activities continue, then petitioner may move before the court on five days’ written notice, for further relief. Respondent’s attorney is directed to secure the necessary assistance in seeing that respondent obtains medical and psychiatric treatment.
The court wishes to commend both counsel for representing their clients with zeal and total professionalism. The court also commends petitioner’s witnésses for their appearances in court, considering the fact that they are residents of the same building.
*148 Accordingly, based upon all the credible evidence presented at trial, the court awards the petitioner a final judgment of possession. Warrant to issue forthwith with execution stayed through June 30, 1992 to provide respondent the opportunity to disengage himself from any activities which may infer an appearance of his acquiescence to any further nuisances or alleged drug activity at the premises.