OPINION OF THE COURT
Anthony J. Fiorella, Jr., J.
In this residential holdover proceeding petitioner seeks a *509 judgment of eviction awarding to the petitioner landlord the possession of the subject premises pursuant to RPAPL 711 (5) and section 231 (1) of the Real Property Law upon the ground that the respondent tenant and others acting with the respondent’s knowledge, permission or acquiescence have been using the premises for illegal purposes and for illegal trade or business, i.e., the sale of drugs.
ESSENTIAL FACTS
Petitioner, in its pleadings, alleges the following upon information and belief:
On May 8, 1997, as a result of a search of the subject premises — 1895 Grand Concourse, Bronx, New York, apartment 32 — the respondent Theresa Ramos, her husband Basilio Ramos, Sr., and her son Basilio Ramos, Jr., were arrested and charged with two felony counts of criminal possession of a controlled substance and two misdemeanor counts of criminally using drug paraphernalia. As a result of this search there was the recovery from a hallway closet of one plastic bag containing cocaine with an aggregate weight of more than 500 milligrams, red and purple zip lock baggies and one black scale.
On July 15, 1997 a second search warrant was executed inside the subject premises and an arrest was made of Estaban Ramos and Basilio Ramos, Sr. charging them each with one misdemeanor count for criminal possession of a controlled substance and one misdemeanor count of criminally using drug paraphernalia. As a result of this search there was the recovery of a brown paper bag containing six tinfoil packets of cocaine from a bedroom within five feet of the aforementioned Estaban and Basilio Ramos, Sr., two strainers and a glass pestle.
In furtherance of its case in chief petitioner called Detective Robert Reillo as a witness to and participant in the aforesaid search and arrest incidents. Detective Reillo testified that on these two separate occasions search warrants were executed at the premises known as 1895 Grand Concourse, Bronx, New York, at apartment 32. The initial arrest occurred in or about May 8, 1997. At the time of this arrest, six adults were in the apartment and five were arrested. All those arrested are members of respondent’s family including her husband Basilio Ramos, Sr. All were charged with possession of a controlled substance. Only Basilio Ramos, Sr. pleaded guilty to a B misdemeanor for possession of a controlled substance. Criminal charges against the remaining five family members were dismissed.
*510 . Detective Reillo further testified that a number of items were vouchered at the time of the arrest including several plastic bags, a digital scale, plastic strainer, funnel and pestle. Further seized at that time were three plastic bags containing alleged cocaine. Out of the three plastic bags seized only one tested positive for cocaine. The May 1997 arrest yielded 54 grains; the July 1997 arrest yielded 46.4 grains. The sum of the currency recovered in the hallway closet of the apartment was $900; the third bedroom, $741; and upon Basilio Ramos, Sr., $382. The total sum of the currency recovered was $2,023.
On cross-examination, the detective further testified that the street value of the recovered cocaine on each occasion would be approximately $60 or less. Additionally, the following questions were propounded:
(1) “To the best of your knowledge, do the records you have in your possession disclose any sale of drugs from the apartment?”
(2) “To the best of your knowledge, do the records in your possession disclose any information that respondent or her husband sold drugs outside the apartment?”
In response to both questions Detective Reillo responded in the negative. He further testified that at the time the search warrants were executed, there were no drug transactions nor were drugs used at the premises and that only a small amount of drugs were recovered. There were no further searches conducted at the premises after July 1997. It should also be noted that the managing agent, Mr. Simalacaj, testified that he has known respondent and her husband for almost eight years and has not received any complaints from other building tenants regarding the sale of drugs out of the apartment.
Basilio Ramos, Sr. testified credibly, candidly admitting that he uses cocaine for personal consumption having done so for almost 20 years. He testified, however, that no one in his family knew about his habit of consuming cocaine. Although he used drugs once or twice a week, he has never sold drugs to anyone. His testimony described his pattern of locking the controlled substance he consumed, along with the attendant paraphernalia, in his closet. He testified to the wearing of the key to his closet around his neck, and that no member of his family had a duplicate key. In fact, he stated that when the police entered the premises to arrest him, he pointed to it and opened the closet where the substance was found in a plastic bag along with the other vouchered items. This was confirmed by Detective Reillo’s testimony.
*511 Mr. Ramos further testified that at the second arrest and his subsequent appearance in court he agreed to a conditional discharge with enrollment in a drug program. Since January 1998 he has resided with his daughter rather then at the subject premises which had been his home for 25 years. He further testified that for the past 15 years his sole means of support was a Social Security disability check in the amount of $600.
Theresa Ramos, the named respondent, testified that she has resided in the apartment for the last 25 years with her seven children and husband. She had never been arrested prior to May and July 1997. Charges against her were dismissed at each court appearance. When arrested, no drugs were found on her. She does not sell or consume drugs. The only time she knew of drugs in the closet was at the time of her husband’s arrest. She did not have the key to the closet and never intruded upon her husband’s privacy interest in the closet; that closet was her husband’s and she never inquired about it. As a consequence of the July arrest, she knew that her husband was given a year’s probation with a mandatory enrollment in a drug rehabilitation program. At that time she insisted that he remove himself from the premises which he did willingly. Theresa Ramos contends that she and her grandchildren should not be removed from her home of 25 years because of her husband’s personal consumption of cocaine.
APPLICABLE LAW
Pursuant to RPAPL 711 (5) and Real Property Law § 231 (1) the burden is upon the petitioner to prove by the preponderance of the credible evidence that the subject premises was used to facilitate trade in drugs and further that the respondent knew and acquiesced in the illegal drug activity in her/his apartment (Lloyd Realty Corp. v Albino, 146 Misc 2d 841 [1990]; Pueblo Nuevo Assocs. v Watkins, NYLJ, Apr. 13, 1987 at 17, col 3; 1820-1838 Amsterdam Equities v Brada, NYLJ, Oct. 14, 1992, at 23, col 4; Paragon Realty Corp. v Kelly, NYLJ, Oct. 30, 1996, at 27, col 2). A tenant will be liable for the illegal acts committed in the leased property by a subtenant or occupant and is subject to forfeiture of the leasehold if the tenant had knowledge of and acquiesced to the use of the demised premises for such an illegal activity. In the case at bar, respondent testified she knew nothing about her husband’s personal consumption of drugs. It is evident that other than the personal consumption, petitioner failed to prove or demonstrate the sale of any drug transaction from the premises as corroborated by *512 Detective Reillo. Where the named tenant is not personally involved in the illegal activity, a “nexus” between the activity and the subject premises must be demonstrated (Marwyte Realty Assoc. v Valcarcel, 150 Misc 2d 1044 [1991]). To warrant eviction the use of the premises for illegal purposes implies doing something customarily or habitually (1021-27 Ave. St. John Hous. Dev. Fund Corp. v Hernandez, 154 Misc 2d 141; 190 Stanton v Santiago, 60 Misc 2d 224 [1969]). A review of the trial testimony of Detective Reillo fails to reveal that the subject premises was being used on any basis for drug activity. Mr. Simalacaj testified that in his eight years as managing agent, he did not receive any complaints about Theresa Ramos. This court cannot draw the inference of acquiescence that illegal drug activity was being conducted from the premises predicated on the search warrants and respondent’s husband pleading guilty to criminal possession of a controlled substance as contended by the petitioner.
While personal consumption of a controlled substance by respondent’s husband in the apartment is a violation of criminal law, it cannot stand as predicate for respondent’s eviction under RPAPL 711 (5) and Real Property Law § 231 (1) especially where there was no proof of illegal activity or acquiescence.
SUMMARY
There was no evidence presented at trial which would indicate a drug trade ever occurred in the apartment. The petitioner did not provide any particulars of even one incident of a sale. There were no named witnesses to any sale and no convictions for a sale. There was no testimony from any tenants whatsoever. The only evidence presented was that a small quantity of drugs and drug paraphernalia was found in the apartment on two separate occasions. The mere fact that illegal drugs were found in the apartment does not warrant one to ipso facto conclude that narcotics were sold in the subject premises. Neither the police officer nor the managing agent who testified on the petitioner’s behalf had any information regarding sales of drugs or any continuous illegal commercial activity from the premises. Considering petitioner’s lack of evidence, this court cannot and should not infer or speculate from the small quantity of drugs, drug paraphernalia, and money that respondent was conducting the illegal sale of drugs from the apartment.
The petitioner has nevertheless failed to prove the second prong of its burden that Theresa Ramos, the tenant of record, *513 knew or should have known of the illegal use. No evidence at all was presented by petitioner with regard to what Mrs. Ramos knew. The evidence showed that Basilio Ramos, Sr. hid these small quantities of drugs and drug paraphernalia in his locked closet to which only he had the key or in a bag but never exposed them to Mrs. Ramos or other family members who live with them. The petitioner urges this court to make a double inference and find that Mrs. Ramos must have known something about a drug trade which must have occurred but clearly the facts indicate a more reasonable finding of nonculpability that Mrs. Ramos did not know of any illegal drug activity in the apartment.
CONCLUSION
Based upon the credible oral and documentary evidence presented in this trial, the court finds that petitioner has failed to sustain its burden of proof in this drug holdover proceeding pursuant to RPAPL 711 (5) and Real Property Law § 231 (1). Accordingly, the court directs that judgment be entered in favor of the respondent dismissing the instant proceeding with prejudice.