OPINION OF THE COURT
Anthony J. Fiorella, Jr., J.
Petitioner instituted this narcotics holdover proceeding pur *408 suant to a letter from the office of the District Attorney, Bronx County. The proceeding was commenced pursuant to sections 711 and 715 of the Real Property Actions and Proceedings Law, section 231 of the Real Property Law and Rent Stabilization Code (9 NYCRR) § 2524.2 (b) and § 2524.3 (d).
Petitioner alleges that respondent and undertenants are using the subject premises for the illegal purpose of selling narcotics. The letter which the District Attorney’s office sent to the landlord included a copy of the Criminal Court complaint which states that Alan Chavez and Jane Olivea were arrested on March 5, 2003 inside the subject premises, i.e., 1221 White Plains Road, apartment 105, Bronx, New York, at approximately 4:30 p.m. as a result of the execution of a search warrant issued by Bronx Criminal Court on March 3, 2003. Both Mr. Chavez and Ms. Olivea were charged with one felony count for criminally possessing a controlled substance and four misdemeanor counts of criminally possessing a controlled substance, two counts pertaining to the criminal use of drug paraphernalia, as well as the criminal possession of marijuana.
As stated in the Criminal Court complaint, the police recovered crack cocaine, marijuana, powdered cocaine, cocaine residue and drug paraphernalia including a scale, numerous baggies used for the packaging of narcotics and a substance which stretches the cocaine. It is also undisputed that the criminal complaint against Chavez and Olivea was dismissed with the payment of a $125 fine.
Salient Facts
Petitioner commences this proceeding contending that respondent and occupants of the apartment were using the premises for the sale and/or the use of drugs. In an action similar to the instant proceeding to evict a tenant or to terminate a respondent’s lease under the so-called “bawdy house” or drug eviction law (Real Property Law § 231 [1]; RPAPL 711 [5]), the petitioner has the burden of proving by a preponderance of the evidence, that the apartment was used for an illegal purpose (City of New York v Rodriguez, 140 Misc 2d 467 [1988]).
David Goldman, officer and president of the petitioner, testified that he received approximately three anonymous telephone calls over an extended period of time advising of an increase in the number of people entering the building allegedly going to respondent’s apartment. His testimony was later contradicted by the testimony of his agent who stated a small group of *409 trespassing teenagers congregated in the hallway. When confronted with this information, respondent Diane Boyer denied any knowledge of illegal drug activity being conducted from her apartment.
Petitioner’s main witness, Detective Weir, testified that he forcibly entered respondent’s apartment about 4:30 p.m. on the afternoon of March 3, 2003 pursuant to a no-knock search warrant. He further testified that a confidential informant allegedly advised that on two occasions he observed possible drug traffic at that apartment. Detective Weir declined to state whether he saw what was purchased or what happened to the purchased items. Detective Weir testified that he had no direct knowledge of the purchase.
After finding some drugs contained in very small envelopes, Detective Weir arrested Alan Chavez and Ms common-law wife Janet Olivea and charged them with possession of a controlled substance, criminally using drug paraphernalia and criminal possession of marijuana pursuant to Penal Law §§ 220.16, 220.50 and 221.10 (2). These sections charged them with alleged intent to unlawfully manufacture, package or dispense a narcotic drug for sale. This information was set forth in the Criminal Court complaint; said complaint alleged that the aggregate weight was more than 25 grams. However, the laboratory analysis results of the drugs tested show that not all drugs were tested. Those that were tested showed total weight of 87.05 grains, substantially less than the 25 grams charged in the complaint. It should also be noted that respondent Diane Boyer was not arrested in her apartment due to the fact that she has a congestive heart disease and kidney disease and was utilizing a walking can of oxygen.
Corespondent Alan Chavez credibly testified that he was a user of marijuana and small amounts of cocaine. Before he was arrested, he showed Detective Weir the location of drugs in the apartment. His personal consumption of drugs did not occur in the apartment. He further testified that he never sold drugs to any person.
The police recovered approximately 200 clear bags with apple sign; 36 ziplock bags with cocaine and marijuana residue were referred to in Detective Weir’s testimony. This demonstrated some evidence of personal consumption. However, Jane Olivea’s testimony clearly contradicted Detective Weir’s that the 200 bags contained cocaine or marijuana residue. Ms. Olivea and the respondent testified consistently that these bags were used *410 for dress beading or craft gems. Respondent assisted her sister Jane by purchasing these gems for decoration and attachment to clothing. The beads "and the small tags came with each purchase so that different colored beads could be kept in different bags for different designs. Each testified that they were attempting to operate a small business from their apartment. Both conclusively denied any use and/or distribution of drugs for sale.
Based upon the facts presented at trial, the evidence and testimony clearly show that the respondents did not live a lifestyle that would be commensurate with the sale of drugs. The respondents live in a small, low rent apartment; they do not own a car; they have no extravagant possessions. In fact, by any reasonable standard, their possessions are meager. The presence of numerous empty bags was clearly explained by them as well as the scale. They were used in Ms. Olivea’s craft work. Mr. Chavez also explained that some of the bags he kept probably contained a presence of marijuana residue. This is an indicator of personal use rather than sales. Respondents credibly testified as to the nature of their disabilities. Petitioner’s attempt to discredit their disabilities were ill informed and ill conceived.
Applicable Law
To prevail in the instant proceeding petitioner must allege and prove two things: (1) that the alleged use itself constituted an illegal trade or business, and (2) that the tenant knew or acquiesced in the illegal use of her apartment. (Howard Ave. Assoc. v Rojas, NYLJ, Apr. 5, 2002, at 20, col 6.)
In the case at bar, petitioner failed in its burden of proof to show any drug activity which would constitute under the operative sections the sale or distribution of drugs that was being conducted at the premises. Petitioner’s witnesses raised many innuendos, but advanced no credible evidence to support a sale of drugs.
Pursuant to RPAPL 711 (5) and Real Property Law § 231 (1) the burden is upon the petitioner to prove by the preponderance of the credible evidence that the subject premises was used to facilitate trade in drugs and further that the respondent knew or acquiesced in the illegal drug activity in his/her apartment. (Lloyd Realty Corp. v Albino, 146 Misc 2d 841 [1990]; Pueblo Nuevo Assoc, v Watkins, NYLJ, Apr. 13, 1987, at 17, col 3; 1820-1838 Amsterdam Equities v Brada, NYLJ, Oct. 14, 1992, at 23, col 4; Paragon Realty Corp. v Kelly, NYLJ, Oct. 30, 1996, *411 at 27, col 2.) A tenant will be liable for the illegal acts committed in the leased property by a subtenant or occupant and is subject to forfeiture of the leasehold if the tenant had knowledge of and acquiesced to the use of the demised premises for such an illegal activity. In the case at bar, respondent testified she knew nothing about Mr. Chavez’s personal consumption of drugs. It is evident that petitioner failed to prove or demonstrate any drug transactions from the premises. Where the named tenant is not personally involved in the illegal activity, a “nexus” between the activity and the subject premises must be demonstrated (Marwyte Realty Assoc, v Valcarcel, 150 Misc 2d 1044 [1991]). To warrant eviction the use of the premises for illegal purposes implies doing something customarily or habitually (1021-27 Ave. St. John Hous. Dev. Fund Corp. v Hernandez, 154 Misc 2d 141 [1992]; 190 Stanton v Santiago, 60 Misc 2d 224 [1969]). A review of the trial testimony of Detective Weir fails to reveal that the subject premises was being used at any time for drug sales. This court cannot draw the inference that illegal drug activity was being conducted from the premises predicated solely on the search warrant and the fact that respondents Ms. Olivea and Mr. Chavez pleaded guilty to criminal possession of a controlled substance.
The court in 1165 Broadway Corp. v Dayana imposed an even higher burden on a petitioner explaining that
“The words ‘business,’ ‘trade’ and ‘manufacture’ themselves present a limitation to the potential reach of Real Property Law § 231 (1) and RPAPL 715 (1). For example, the personal use of illegal drugs within a premises, even if habitual and customary, does not constitute an illegal use of that premises for purposes of Real Property Law § 231 (1) and RPAPL 715 (1) because such conduct does not amount to a commercial activity or enterprise.” (166 Misc 2d 939, 944 [1995]; see also, Clifton Ct. v Williams, NYLJ, May 27, 1998, at 28, col 6 [App Term, 2d & 11th Jud Dists].)
In the instant case, the items allegedly seized from the subject premises — mostly empty bags — are similarly easy to transport. Moreover, as previously noted, petitioner fails to allege a single drug transaction taking place in or near the subject premises, and fails to allege the recovery of items commonly associated with an ongoing drug enterprise. In fact, petitioner alleges a single incident as the basis of the eviction proceeding: the effectuation and result of a search warrant executed on March 5, \) *412 2003. Petitioner has failed, therefore, to plead facts sufficient to support the inference of customary and habitual illegal use of the premises by the tenant.
The instant proceeding is another example where no one including this court can determine the accuracy of the information provided by the confidential informant. This clearly falls outside the purview of the real purpose and intent of the no-knock warrants. If any of the confidential information had been checked and verified, then this search warrant which yielded insufficient contraband would have been avoided and would probably not have been issued. Respondents might have been spared the disruption, and emotional turmoil they experienced.
Conclusion
Based upon the foregoing analysis and discussion, the court after trial awards respondent a final judgment dismissing the petition in its entirety with prejudice. The court wishes to commend both attorneys for skillfully and zealously representing their clients in a professional fashion.