■ 855-79 LLC, Respondent, v CARMEN SALAS, Appellant.
[837 NYS2d 631]—

Order of the Appellate Term of the Supreme Court of the State of New York, First Department, entered December 16, 2005, which reversed a judgment of the Civil Court, New York County (Anthony J. Fiorella, Jr., J.), entered on or about April 26, 2004, dismissing, after a nonjury trial, petitioner's holdover proceeding to recover possession of the premises, unanimously reversed, on the law, without costs, and the petition dismissed.

In March 2003, in response to the Manhattan District Attorney's Office's request, petitioner landlord commenced this summary holdover proceeding against respondent tenant pursuant to RPAPL 715, on the ground that tenant's apartment was being used for illegal drug activity. The police had executed a search warrant for tenant's apartment in September 2002 one week after tenant's grandson was arrested—around the corner from her apartment building—for possession of a marijuana cigarette laced with PCP.

Pursuant to RPAPL 711 (5) and Real Property Law § 231 (1), the landlord has the burden to prove by a preponderance of the credible evidence that the subject premises were used to facilitate trade in drugs and that the tenant knew or should have known of the activities and acquiesced in the illegal drug activity in the apartment (*1895 Grand Concourse Assoc. v Ramos*, 179 Misc 2d 508, 511 [Civ Ct, Bx County 1998], citing *Lloyd Realty Corp. v Albino*, 146 Misc 2d 841 [Civ Ct, NY County 1990], *see also Matter of 88-09 Realty v Hill*, 305 AD2d 409, 410 [2003]).

The trial court found that landlord failed to meet its burden of proof and dismissed the proceeding. Appellate Term found, however, that the elderly and disabled tenant should have known her son and grandson kept drugs hidden in the apartment, after drawing a negative inference from her failure to testify at trial. We reverse.

On this record, no valid line of reasoning could possibly lead to the conclusion that tenant knew or should have known of the drugs in her apartment. Certainly, there was no testimony to that effect. Nor were there any obvious signs of drug trade in the apartment, or any evidence that tenant would have known what those signs were. Given tenant's daughter's and her internist's uncontroverted testimony about her medical condition, landlord failed to establish that tenant should have known the nature of the articles, drugs, and associated paraphernalia that her son and grandson kept in the apartment. Specifically, tenant, a septuagenarian, suffers from a serious thyroid condition that adversely affects her vision. Both her vision and hear-

ing had sharply declined in the five years preceding the trial. In addition, tenant suffers from asthma and depression. The uncontroverted testimony indicates that she is easily confused, forgetful, and not always aware of her surroundings. Notably, prior to trial, the court (Kevin C. McClanahan, J.) appointed tenant's daughter as "guardian ad litem" upon determining that tenant "may not understand the nature and consequences of these proceedings and be able to adequately protect her rights and interests."

At trial, it was established that tenant's grandson was arrested around the corner from tenant's building a week before a search warrant was executed for tenant's apartment. There is no testimony in the record that tenant was aware of this arrest outside her apartment building, and no inference to that effect can be drawn given tenant's many infirmities and that her grandson did not live with her. Tenant did know that her son, who was temporarily living with her, had a substance abuse problem; however, she also knew that he was seeking outpatient treatment.

During the trial, the police officer who conducted the search of tenant's apartment testified that the drugs were not in plain view. Most of the drugs and paraphernalia were in the back bedroom, where tenant did not sleep, or in an air shaft, and were in closed containers. The officer testified that although there were more drugs than would bespeak personal use, the street value of a few hundred dollars would indicate low-level drug sales. Many of the substances recovered did not test positive for drugs, thus even further reducing the officer's calculation of their street value. The type and amount of contraband recovered does not give rise to an inference of either actual or constructive knowledge by this tenant (cf. *New York City Hous. Auth. v Otero*, 5 Misc 3d 134[A], 2004 NY Slip Op 51454[U] [App Term, 1st Dept 2004] [recovery of 288 bags of cocaine, digital scales, speed loader, stun gun, ammunition, $6,000 in cash, and metal safe negated tenant's denial of knowledge of illegal activity]).

To warrant eviction based on use of premises for illegal activity, use "implies doing of something customarily or habitually upon the premises" (*1021-27 Ave. St. John Hous. Dev. Fund Corp. v Hernandez*, 154 Misc 2d 141, 145 [Civ Ct, Bx County 1992]; *1895 Grand Concourse*, 179 Misc 2d at 512). The neighbor's testimony that he complained to the landlord that the son and grandson were selling drugs outside the building late at night, was insufficient, standing alone, to establish "customary or habitual" illegal activity or to infer that tenant, who

had been living in the apartment without incident since 1979, acquiesced in the illegal drug activity (*compare 88-09 Realty*, 305 AD2d 409 [2003], *supra* [landlord met its burden of establishing tenant's apartment being used by her son and her friends for drug dealing where activities persisted over period of time and were subject of complaints by people in the community]). Here, the alleged activity took place outside the apartment late at night and there is nothing in the record from which to infer reasonably that an elderly woman with vision and hearing problems was aware or should have been aware of this activity.

Based on this record, we find that this elderly, disabled tenant should not have to forfeit her right to a rent-stabilized apartment when her son, who was living with her temporarily, and her grandson, who stayed only occasionally, were charged with possession of drugs with intent to sell. Indeed, there is insufficient evidence to permit an inference that tenant was aware of any illegal drug activity being conducted, such that she would be deemed to have acquiesced in any illegal premises use (*see Lloyd Realty Corp. v Albino*, 146 Misc 2d 841 [Civ Ct, NY County 1990]). "[T]he eviction of a senior citizen who has no knowledge nor involvement of the illegal drug activity conducted in her apartment will not further serve the purpose of the narcotics eviction program" (*id.* at 846).

Finally, contrary the Appellate Term's decision, tenant was not required to offer a reason for her failure to testify. A party's failure to testify "does not permit the trier of the fact to speculate about what [the] testimony might have been nor does it require an adverse inference" (*Matter of Commissioner of Social Servs. v Philip De G.*, 59 NY2d 137, 141 [1983]); rather, it permits an adverse inference (*Tishman Constr. Corp. of N.Y. v City of New York*, 306 AD2d 150, 151 [2003], citing *Philip De G.*). Here, the trial court properly refused to draw an adverse inference from tenant's failure to testify, in view of her mental and physical infirmities. Concur—Andrias, J.P., Marlow, Nardelli, Sweeny and McGuire, JJ. [*See* 10 Misc 3d 132(A), 2005 NY Slip Op 52039(U) (2005).]