OPINION OF THE COURT
Jean Schneider, J.
This is a proceeding brought under RPAPL 711 (5) and 715 to recover possession of an apartment on the grounds that the apartment has allegedly been used for an illegal trade or business. The apartment at issue is part of a public housing project owned and operated by petitioner, the New York City Housing Authority (NYCHA). Respondent Yolanda Grillasca is 44 years old, severely mentally ill and has measured intelligence in the extremely low to borderline range. She has lived in the subject apartment with her 28-year-old mentally disabled son for 13 years.
The matter came before me for trial in August 2006. Both parties were represented by counsel. In addition, because of respondent’s severe mental illness, the court had appointed a guardian ad litem to act for the respondent pursuant to article 12 of the CPLR. On the basis of the credible evidence at the trial, I make the following findings of fact.
On April 5, 2005, New York City police officers entered and searched the respondent’s apartment. They found a small quantity (6.8 grains) of marijuana and a larger quantity (Vs ounce plus 6.8 grains) of cocaine. The two police officers who testified at the trial did not say where in the apartment the drugs were found, nor did the evidence vouchers placed in evidence indicate where the drugs were found.
The police also found three small digital scales (each the size of the palm of one’s hand), a scanner, two cell phones, and a quantity of small green ziplock bags. The bags were found in the apartment’s second bedroom. There is no evidence with respect to where any of the other items were found.
A small safe in the apartment contained only passports and other personal documents, nothing related to drugs. The police found no guns or ammunition in the apartment and only $113 in cash. They also found a paper napkin in a living room wall unit with dollar figures on it.
*526 The police arrested respondent in the apartment. She later pleaded guilty to drug possession pursuant to Penal Law § 220.09 (1) and was sentenced to five years’ probation. Later the same evening, a second woman, who did not live in the respondent’s apartment, was arrested for trespassing at the door to the apartment. This second woman later pleaded guilty to misdemeanor drug possession.
Georgiana Cemento, an intensive case manager with the Visiting Nurse Service (VNS), has visited the respondent at her apartment once a week, for about an hour each time, for six or seven years. Most of these visits have been during the day, but Ms. Cemento has occasionally visited in the early evening without an appointment.
Ms. Cemento escorts respondent to her medical appointments, takes her shopping for food and other necessities, helps her to pay her bills, and provides her with basic support and help with routine activities. Respondent’s son also has a hospital-based support team that visits him once a week in the apartment.
Ms. Cemento has never seen any drugs or drug-related materials in the apartment on any of her visits. She has never observed any evidence of drug sales in the apartment. She has observed that respondent has few visitors and that her son appears to have none. According to Ms. Cemento, respondent cannot shop for food or pay bills without assistance, has trouble understanding numbers and doing simple math, and could not conduct a business on her own.
Respondent’s certified medical records show that she is treated at Gouverneur Hospital for chronic paranoid schizophrenia. She has been hospitalized for this condition 12 times, beginning when she was 27 years old and continuing until 2003. She is now treated with a monthly injection of antipsychotic medication administered at the hospital, as well as regular individual and group therapy, and has been stable on this regimen since her last hospitalization.
Psychological testing reveals that respondent has a full scale IQ of 72, in the “extremely low to borderline” range. She has very poor math skills and her overall adaptive skill level is moderately low. Respondent tested positive for marijuana use during her last hospitalization. There is no evidence that she has used any illegal drug since then. She was tested several times after her arrest with negative results.
Respondent did not testify at the trial. Because of her severe mental illness and her low functional level, I do not draw an *527 adverse inference from her failure to testify. (See 855-79 LLC v Salas, 40 AD3d 553, 556 [1st Dept 2007] [“(T)he trial court properly refused to draw an adverse inference from tenant’s failure to testify, in view of her mental and physical infirmities”].)
In order to prevail under RPAPL 711 (5) and 715, petitioner must show that the apartment it seeks to recover has been used not just once or twice but “customarily or habitually” for an illegal trade or business like the sale of illegal drugs. (Grosfeld Realty Co. v Lagares, 150 Misc 2d 22, 23 [App Term, 1st Dept 1989]; Clifton Ct., Inc. v Williams, NYLJ, May 27, 1998, at 28, col 6 [App Term, 2d Dept].) Evidence that establishes only a single instance of illegal drugs in the apartment, even combined with a single criminal disposition, is insufficient to prove that the apartment is habitually used for the illegal sale of drugs. (554 W. 148th St. Assoc. LLC v Thomas, 8 Misc 3d 132 [App Term, 1st Dept 2005].) The court must be able to determine that any illegal activity was not an isolated incident but rather part of a customary or habitual pattern of criminal activity that would warrant forfeiture of a valuable leasehold. (New York County Dist. Attorney’s Off. v Betesh, NYLJ, Nov. 23, 1998, at 30, col 6 [App Term, 1st Dept].)
New York law also requires that petitioner show that the respondent tenant faced with eviction either knew or should have known of the illegal activity in the apartment. (855-79 LLC v Salas, supra.) In the absence of actual knowledge, knowledge may be imputed to the respondent where drugs and drug-related items are found in plain view in the apartment or where the drug activity in the apartment is so extensive or pervasive that the tenant could not have been unaware of it. (See e.g. 210 W. 29th St. Corp. v Scenic Off. Parks, Inc., NYLJ, May 22, 2000, at 24, col 6 [App Term, 1st Dept].)
Petitioner here argues that it is not required to show knowledge or acquiescence in this case because the United States Supreme Court in Department of Housing & Urban Development v Rucker (535 US 125 [2002]) has permitted public housing authorities to evict tenants for illegal drug activity under a “strict liability” standard.
In Rucker, the Supreme Court held that federal law requires public housing authorities to include in their leases a clause providing for termination of the tenancy for any drug activity on the premises, whether the tenant is aware of the activity or not. The Court held that this “strict liability” lease clause is fully enforceable, even against an entirely blameless tenant.
*528 The issue in the case before me, though, is whether or not Rucker is relevant to New York’s statutory eviction proceedings for illegal activity. Proceedings under RPAPL 711 (5) and 715 are not based upon lease violations but upon the statute itself. (Murphy v Relaxation Plus Commodore, 83 Misc 2d 838 [1st Dept 1975].) A landlord can bring a statutory proceeding based upon illegal drug activity even if its lease with the tenant has no clause prohibiting illegal activity. In fact, the proceeding can be brought by someone who is not the landlord at all, like a nearby resident or a law enforcement agency.
What petitioner argues, in essence, is that because of its “strict liability” lease clause, its burden of proof in a statutory proceeding, unrelated to the lease, is different from that of any other petitioner. This simply cannot be the case. The statute is available to all landlords equally, and contains no special rules for public housing authorities or for tenancies governed by particular lease clauses.
Further, nothing bars petitioner from using its administrative termination of tenancy procedure, based upon violation of its lease provisions and applying the strict liability standard of Rucker there. That administrative procedure was the only way for NYCHA to terminate a tenancy for many years, until a federal court ruling permitted NYCHA to bring statutory proceedings under RPAPL 711 (5) and 715 as well. (See Escalera v New York Hous. Auth., 924 F Supp 1323 [SD NY 1996].)
Apparently applying this distinction between the standard in administrative termination proceedings and in statutory proceedings in this court, the Appellate Division, First Department, in Matter of Satterwhite v Hernandez (16 AD3d 131 [2005]), has applied the “strict liability” standard to a case in which NYCHA used its Escalera administrative procedure to terminate the lease for violation of the no drug activity clause, while the Appellate Term, First Department, has. continued to apply the “knew or should have known” standard to post-Rucker cases brought under the statute. (See e.g. New York City Hous. Auth. v Eaddy, 7 Misc 3d 131 [A], 2005 NY Slip Op 50617[U], *1 [App Term, 1st Dept 2005] [“The evidence, fairly interpreted, thus supports the dual findings that the apartment was being used for illegal purposes (see RPAPL 711 [5]), and that the tenant ‘knew or should have known of the activities and acquiesced therein’ ”]; New York City Hous. Auth. v Otero, 5 Misc 3d 134[A], 2004 NY Slip Op *529 51454[U], *2 [1st Dept 2004] [“The amount of contraband recovered negates tenant’s denial of knowledge . . . and gives rise to an inference that the tenant knew or should have known that the apartment was being used as a base for illegal drug activity”]; but see New York City Hous. Auth., Gowanus Houses v Taylor, 6 Misc 3d 135[A], 2005 NY Slip Op 50209[U] [App Term, 2d and 11th Jud Dists 2005] [in which the Appellate Term in the Second Department held that Rucker operates to apply the strict liability standard even in a statutory cause of action].)
I hold that, in this statutory case, the strict liability standard of Rucker does not apply and that petitioner must show that respondent knew or should have known of the illegal activity in her apartment. Petitioner, as always, has the option of using the administrative procedure if it wishes to apply the strict liability standard.
In the case before me, I find that petitioner did not meet its burden to prove that the apartment was used customarily or habitually for the sale of illegal drugs. Drugs were found in the apartment on a single occasion. There is no evidence of a single drug transaction in the apartment. There is no evidence of unusual traffic in and out of the apartment. There is no evidence that drugs were present in the apartment on any other occasion either before or since April 5, 2005. As in Clifton Ct., Inc. v Williams (supra), all of the items found by the police on April 5, 2005 were small enough to fit in a tote or small gym bag and could easily have been transported into or out of the apartment. The evidence is simply not sufficient to permit an inference that drugs were being sold from the apartment on a regular basis.
Further, even if the evidence were sufficient to establish that the apartment was customarily or habitually used for drug sales, I would find that petitioner failed to prove that respondent knew or should have known of the drug activity. There is no evidence that any drugs or related items were in plain view in the apartment. There is no evidence of transactions or traffic through the apartment so as to permit an inference that anyone in the apartment would have been aware of the activity. The VNS case manager was not aware of any drug-related activity in the apartment although she was there once a week. I find, too, that the respondent’s mental illness and limited intellectual functioning are relevant to whether or not she knew or should have known of the drugs. (See 855-79 LLC v Salas, supra.) Her *530 limited abilities make it even less likely that she was aware of any such activity.
Accordingly, based upon the evidence at the trial and upon the applicable law, the proceeding is dismissed on the merits.