OPINION OF THE COURT
Per Curiam.
Final judgment, entered September 26, 2014, reversed, with $30 costs, and matter remanded to Civil Court for further proceedings consistent herewith. Appeal from order, dated July 30, 2014, dismissed, without costs, as subsumed in the appeal from the final judgment.
At the trial of this illegal use holdover proceeding (see RPAPL 711 [5]; Real Property Law § 231 [1]) “landlord ha[d] the burden to prove by a preponderance of the credible evidence that the subject premises were used to facilitate trade in drugs and that the tenant knew or should have known of the activities and acquiesced in the illegal drug activity in the apartment” (855-79 LLC v Salas, 40 AD3d 553, 554 [2007]).
We agree with the trial court that landlord met its burden of establishing that the subject apartment was being used by tenant’s adult son for the illegal drug activities, a finding not specifically challenged on appeal by tenant. In this regard, the undisputed evidence established that police recovered from various locations inside the apartment, among other things, some 240 ziplock bags of crack cocaine and heroin, baggies, and a scale. The arresting officer, based on her extensive experience, testified that one of the bedrooms in the apartment was openly used as a “working room” where drugs were “cut and packaged”; that the drugs were not hidden; and that anyone looking into that bedroom would see drugs from the outside. In addition, tenant’s son, who was arrested during the search, subsequently pleaded guilty to reduced charges of criminal possession of a controlled substance in the third degree, a class B felony.
However, a new trial is required on the issue of whether tenant knew or should have known of the illegal drug activities *13 and acquiesced in such activities. There was evidence, on the one hand, sufficient to give rise to an inference of tenant’s knowledge and acquiescence, including the amount, nature and location of the contraband recovered in the apartment; the glass pipe containing crack residue found in tenant’s own bedroom; and tenant’s acknowledgment that police had entered her apartment on a prior occasion due to suspected drug activity (see Matter of 88-09 Realty v Hill, 305 AD2d 409, 410 [2003]; New York City Hous. Dev., LLC v Arias, 11 Misc 3d 138[A], 2006 NY Slip Op 50531[U] [App Term, 1st Dept 2006]). On the other hand, tenant adduced expert testimony regarding her psychiatric and mental infirmities, in an effort to establish that she lacked the capacity to comprehend the illegal drug activity occurring in her apartment. However, upon landlord’s objection, the court struck this testimony on the ground that tenant’s lack of mental capacity was not pleaded as an affirmative defense.
We believe that the drastic remedy of striking all of the expert testimony was unduly harsh in this particular case. Landlord had been aware — from the very inception of the case—that a guardian ad litem had been appointed for tenant upon a determination that tenant “is incapable of adequately defending her rights” based upon a prior diagnosis of paranoid schizophrenia (see 855-79 LLC v Salas, 40 AD3d at 555). Furthermore, inasmuch as landlord had the burden of establishing tenant’s knowledge of and acquiescence to the illegal drug activity (855-79 LLC v Salas, 40 AD3d at 554), tenant should have been permitted to offer some evidence tending to disprove these elements. We also note that the expert testimony was material and, indeed, the heart of tenant’s defense of this proceeding. In remanding, we note that since tenant has placed her mental condition in controversy, landlord may seek appropriate discovery of her condition (see TOA Constr. Co. v Tsitsires, 4 AD3d 141 [2004]).
Lowe, III, P.J., Shulman and Ling-Cohan, JJ., concur.