Gur Assoc. LLC v Convenience on Eight Corp. (2023 NY Slip Op 23413)

[*1]

Gur Assoc. LLC v Convenience on Eight Corp.

2023 NY Slip Op 23413

Decided on December 21, 2023

Civil Court Of The City Of New York, New York County

Tsai, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on December 21, 2023
Civil Court of the City of New York, New York County

Gur Associates LLC, Petitioner,

against
Convenience on Eight Corporation d/b/a AM PM MARKET, Respondent/Tenant, and BING BONG CANDY SHOP INC., XYZ Corp., JOHN DOE and JANE DOE, Respondents/Undertenants.

Index No. LT-317980-23/NY

Law Office of Marc Scolnick, P.C. (Marc Scolnick, of counsel), New York City, for respondent Convenience on Eighth d/b/a AM PM Market, sued herein as Convenience on Eight Corporation d/b/a AM PM Market
Mark S. Friedlander, New York City, for petitioner.

Richard Tsai, J.

In this commercial holdover proceeding, petitioner Gur Associates LLC (landlord) seeks a judgment of possession and a money judgment from respondents based on illegal use of the premises for the unlicensed retail sale of cannabis. Having failed to timely answer the petition, respondent Convenience on Eight Corporation DBA AM PM Market (tenant) now moves to dismiss the proceeding, on the grounds that the petition fails to state a cause of action for [*2]eviction based on illegal use, lack of personal jurisdiction, and waiver by acceptance of rent. 
Landlord opposes the motion. BACKGROUND
It is undisputed that tenant entered into possession of the premises pursuant to a written lease dated January 18, 2023 (petition ¶ 2). The subject premises are described as: "All rooms, divisions, and parts of the rooms of the North Store on the ground floor located at the premises commonly known as 584 Eighth [sic], New York, New York 10018 ('Premises')" (id. ¶ 3). Landlord asserts that, pursuant to the lease, the Premises are to be used "as a first class convenience store selling snacks, drinks, chips, candies, lottery tickets, tobacco and ancillary items provided such use complies with any and all zoning laws, ordinances and other laws affecting the Premises and the Certificate of Occupancy and for no other purpose" (id. ¶ 4).
Less than a year after this tenancy began, landlord commenced the instant holdover proceeding, alleging that tenant has "illegally allowed" respondent undertenant Bing Bong Candy Shop Inc. (Bing Bong) "to take possession of the Premises without the Petitioner's permission or consent," and that, since about April 2023, Bing Bong "has been selling marijuana, which is a controlled substance, without a valid license to sell such controlled substance" as well "hemp and flavored nicotine products without a proper license," in violation of the lease and "local, state and federal laws" (id. ¶¶ 5-6). 
Annexed to the petition was a letter from the District Attorney of New York County, which stated, in relevant part, "We have received reports through concerned residents that Bing Bong may be in violation of city laws that prohibit the sale of flavored nicotine products, and may be selling cannabis and/or hemp products without a license, in violation of the state Cannabis Law" (NYSCEF Doc. No. 4 [Exhibit B to the petition]).
According to an affidavit of service filed with the court, landlord's process server delivered a true copy of the notice petition and petition, for each respondent, to an individual employed at the premises named "Mohamed Heariro" on September 20, 2023 at 4:27 PM (NYSCEF Doc. No. 8 [affidavit of service]). Mohamed Heariro is described as a 29-year-old male with brown skin and black hair standing approximately 5 feet, 7 inches and weighing approximately 150 pounds (id.). The affidavit of service further states that copies of the petition and notice of petition were sent to the premises on September 21, 2023 via both certified mail and regular first class mail for each respondent (id.).
On October 5, 2023 at 11:00 AM, the return date on the notice of petition, counsel for landlord appeared before this court and respondents failed to appear (FTR, courtroom 772, at 12:21 PM). Accordingly, respondents' default was taken on the record, and the matter was adjourned for an inquest hearing on October 24, 2023 at 11:00 AM.
On October 20, 2023, counsel for respondent "Convenience on Eight [sic] D/B/A AM PM Market" filed a notice of appearance, along with a motion to dismiss. Tenant argued, among other things, that the court lacked personal jurisdiction over tenant and that petition failed to state a cause of action (Tenant's memorandum of law in support of motion to dismiss, at 14 [NYSCEF Doc. No. 14]). 
On October 24, 2023, the date of the inquest, counsel for the parties appeared before this court on the record (FTR, courtroom 772, at 11:53 AM). Over petitioner's objection, this court set a briefing schedule for tenant's motion and adjourned the inquest and the motion to [*3]November 9, 2023 at 11:00 AM.
On November 9, 2023, another judge of the Civil Court marked the motion as submitted and referred tenant's motion to this court. Oral argument was held before this court on the digital record on December 8, 2023 (FTR, courtroom 772, at 2:20—2:55 PM).

 DISCUSSION
As a threshold matter, tenant's motion to dismiss was untimely filed after tenant defaulted in answering (see Clinkscale v Sampson, 74 AD3d 721, 722 [2d Dept 2010] ["Since no extension of time to make the motion to dismiss was requested by the defendants or granted by the court . . . the motion should have been denied as untimely"]). However, on October 24, 2023, when this court questioned tenant's counsel on whether tenant could move to dismiss the petition after it had defaulted in answering the petition, tenant's counsel asked that the motion to dismiss also be deemed a motion to vacate its default in answering, which was granted. 
I. The branch of tenant's motion seeking dismissal of the complaint
Tenant argues that this proceeding should be dismissed because: (1) landlord failed to properly serve the petition and notice of petition on tenant and thus the court lacks personal jurisdiction over tenant; (2) the court also lacks jurisdiction over tenant because landlord's notice to cure was defective and because tenant was not served with a notice of termination prior to the commencement of this proceeding; (3) the petition fails to make sufficiently specific allegations to sustain an eviction based on "illegal use" of the premises pursuant to Real Property Law § 231; and (4) landlord waived any alleged default of the lease by accepting rent from tenant.
A. Service of the Petition and Notice of Petition
A process server's affidavit of service gives rise to a presumption of proper service (see Machovec v Svoboda, 120 AD3d 772, 773 [2d Dept 2014]; Stephan B. Gleich & Assoc. v Gritsipis, 87 AD3d 216, 220-221 [2d Dept 2011] ). "'In order to warrant a hearing to determine the validity of service of process, the denial of service must be substantiated by specific, detailed facts that contradict the affidavit of service'" (Deutsche Bank Natl. Tr. Co. v Hossain, 187 AD3d 986, 987 [2d Dept 2020]; see also 1700 First Ave. LLC v Parsons-Novak, 46 Misc 3d 30, 32 [App Term, 1st Dept 2014]).
Here, tenant's counsel asserts, "upon information and belief," that Mohamed Heariro—the employee at the premises purportedly served with the petition and notice of petition according to the affidavit of service on file with the court—"is not known to nor authorized to accept service on behalf of Respondent under CPLR § 311" (affirmation of respondent's counsel in support of motion to dismiss ¶ 23 [NYSCEF Doc. No. 12]). Tenant's counsel further contends that "[t]his individual is unknown to Respondent and not a worker/employee of Respondent" (id. ¶ 24). 
The assertions of tenant's counsel are not sufficient to warrant a traverse hearing, as they [*4]do not appear to be based on personal knowledge.[FN1]
Rather, tenant's counsel's knowledge was "premised upon a review of the pleadings, documents, memoranda and correspondence contained in my office file, my conversations with Respondent-Tenant and/or its agents, and my independent research and investigation" (id. ¶ 2). Tenant's counsel does not provide any further information as to the basis for any personal knowledge regarding the manner of service. 
Neither does tenant's counsel assert that there were no male employees fitting the description of Mohamed Heariro on September 20, 2023 — the date of the alleged service. Nor does tenant's counsel account for the possibility that Mohamed Heariro was a Bing Bong employee. For all these reasons, the court finds that tenant's counsel's "conclusory denial" of service is "insufficient to rebut the presumption that service was proper" (2301 7th Ave. HDFC v Escoffier, 41 Misc 3d 138[A], 2013 NY Slip Op 51920[U] [App Term, 1st Dept 2013]; 104 Realty, LLC v Johnson, 35 Misc 3d 148[A], 2012 NY Slip Op 51077[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2012]).
Relatedly, tenant also argues that service was defective because the affidavit of service was not filed with the court within three days after service of the petition and notice of petition (respondent's memorandum of law in support of motion to dismiss ¶¶ 42-56). However, during oral argument, tenant's counsel agreed that the affidavit of service was indeed timely filed on Monday, September 25, 2023. Because the pleadings were served by substituted service, the three days to file the affidavit of service ran from the date of mailing (RPAPL 735 [2] [b]), which occurred on September 21, 2023. However, because September 24, 2023 fell on a Sunday, the landlord was permitted to file the affidavit of service on the following business day (General Construction Law § 25-a).
B. Service of a Notice to Cure and Notice of Termination
"[A] termination notice is not generally required to maintain an illegal use proceeding, since such a proceeding is founded upon statutory authority and not the termination of a lease," unless a "governing regulatory scheme" require a pre-eviction notice (New York City Hous. Auth. v Harvell, 189 Misc 2d 295, 296 [App Term, 1st Dept 2001]; see also Jackson Terrace Assoc. v Patterson, 159 Misc 2d 637, 638 [App Term, 2d Dept, 9th & 10th Jud Dists 1994]). Tenant has not established that there is a "governing regulatory scheme" that required landlord to serve tenant with a notice of termination prior to commencing this proceeding. Therefore, the court rejects tenant's argument that this proceeding must be dismissed because tenant was not served with a notice of termination.
Similarly, in regards to a notice to cure,
"R.P.L., s 231, subd. 1, is in no way dependent upon the covenants of the lease. There is a difference between a violation of law and violation of the terms of the lease. The lease being void, the covenants in the lease which relate to preliminary notice as a condition to instituting eviction proceedings have no probative effect"
(Murphy v Relaxation Plus Commodore, Ltd., 83 Misc 2d 838, 839 [App Term, 1st Dept 1975]).
C. Sufficiency of the Allegations of Illegal Use
"'When assessing the adequacy of a complaint in light of a CPLR 3211 (a) (7) motion to dismiss, the court must afford the pleadings a liberal construction, accept the allegations of the complaint as true and provide [petitioner] "the benefit of every possible favorable inference.' 'Whether a [petitioner] can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss.' Further, any deficiencies in the complaint may be amplified by supplemental pleadings and other evidence"
(AG Capital Funding Partners, L.P. v State St. Bank and Tr. Co., 5 NY3d 582, 591 [2005] [internal citations omitted]). "[A] defective complaint will not be dismissed where affidavits and other evidence amplify inartfully pleaded but potentially meritorious claims" (Ninth Space LLC v Goldman, 192 AD3d 594 [1st Dept 2021]).
Real Property Law § 231 (1) states, in relevant part:
"Whenever the lessee or occupant other than the owner of any building or premises, shall use or occupy the same, or any part thereof, for any illegal trade, manufacture or other business, the lease or agreement for the letting or occupancy of such building or premises, or any part thereof shall thereupon become void, and the landlord of such lessee or occupant may enter upon the premises so let or occupied."
RPAPL 711 (5) permits a landlord to commence a holdover proceeding where "[t]he premises, or any part thereof, are used or occupied as a bawdy-house, or house or place of assignation for lewd persons, or for purposes of prostitution, or for any illegal trade or manufacture, or other illegal business." 
"To warrant eviction based on use of premises for illegal activity, use 'implies doing of something customarily or habitually upon the premises'" (855-79 LLC v Salas, 40 AD3d 553, 555 [1st Dept 2007] [citations omitted]).
"'To say that a building is 'used' for a specified purpose means in substance that it is kept or maintained for such a purpose ... There must be a showing that the tenant has departed from the legitimate or legal use for which the premises were hired, by some measurable degree of continuity of acts of vice related to the occupancy of the premises or to the method of conducting the business therein'"
(Solow Bldg. Co., II, L.L.C. v Banc of Am. Sec., LLC, 13 Misc 3d 55, 56-57 [App Term, 1st Dept 2006] [internal citation omitted]). "[P]etitioner must show that the premises it seeks to recover has been used not just once or twice but 'customarily or habitually' for an illegal trade" (36170 [*5]Realty Ltd. V Boyd, 73 Misc 3d 920, 933-34 [Civ Ct, Kings County 2021]; 554 W. 148th St. Assoc. LLC v Thomas, 8 Misc 3d 132[A], 2005 NY Slip Op 51139[U] [App Term, 1st Dept 2005]). However, "proof sufficient to support a criminal conviction . . . [i]s not a sine qua non of the landlord's right to recover possession" in an illegal use holdover proceeding (Midcenter Equities Assocs. v Nghiem My Quack Tran, 10 Misc 3d 141[A], 2006 NY Slip Op 50040[U] [App Term, 1st Dept 2006]).
Additionally, the landlord must prove that the tenant knew or should have known of the activities and acquiesced in such illegal activity on the premises (WHGA Renaissance Apts., L.P. v Jackson, 53 Misc 3d 11, 12 [App Term, 1st Dept 2016]). "It is not necessary that the tenant actually participate in the illegal activity; it is sufficient that 'the acts and conduct complained of warrant the inference of acquiescence'" (Matter of 88-09 Realty, LLC v Hill, 305 AD2d 409, 410 [2d Dept 2003] [citations omitted]).
Notwithstanding the above, RPAPL 715-a (4), effective May 3, 2023, states that "[t]he use or occupancy of premises solely or primarily for the unlicensed retail sale of cannabis shall constitute an illegal trade, manufacture, or other business for the purposes of section two hundred thirty-one of the real property law."
Here, the petition, as amplified by the affidavit of petitioner's managing agent, Shmaya Glick, and photographs of the premises, more than adequately pleads that the premises were solely or primarily used for the unlicensed retail sale of cannabis.
Glick avers that he visited the premises "eight times during the period starting April 2023 through October 26, 2023 and purchased marijuana cigarettes each time" and annexes photographs of the interior and exterior of the premises (Glick aff in opposition ¶ 8 [NYSCEF Doc. No. 16]). 
A photograph of the exterior of the premises taken by Glick also gave ample notice to tenant that the premises were purportedly marketed as a store for the purchase of cannabis products. In the picture of the awning for the name of the store an anthropomorphic marijuana leaf appears between the words "Bing Bong" (Petitioner's Exhibit D in opposition to motion [NYSCEF Doc. No. 19]). To the left of those words appears a gorilla resembling King Kong, wearing a marijuana leaf with the word "cannabis" directly under the leaf (id.). On the other side of the awning is the face of a bear wearing what appears to be a ranger hat—perhaps an allusion to Smokey the Bear—and the bear is smoking a convex-shaped cigarette with the word "Exotics" below him (id.). Meanwhile, the word "THC" appears in neon lights surrounded by two marijuana leaves on the storefront glass (id.). 
A photograph that Glick took inside the premises shows a sign which reads:
"HAPPY HOLLOWEEN:
• $15 8ths
• 3 PreRolls for $25"
(Petitioner's Exhibit E in opposition [NYSCEF Doc. No. 21]). Another photo taken by Glick shows various products on shelves behind the counter, which are allegedly cannabis products (Petitioner's Exhibit G in opposition [NYSCEF Doc. No. 23]). 

Given these allegations that consumers were being invited into the store to purchase cannabis products, and that Glick averred that he purchased marijuana products on eight separate occasions, the petition more than adequately pleads that the premises were used solely or [*6]primarily for the retail sale of cannabis. The petition also alleges that such sales occurred without a valid license (petition ¶ 5). In sum, the petition adequately pleads illegal use of the premises for the unlicensed retail sale of cannabis.
The court rejects tenant's argument that the petition must allege that any cannabis products sold on the premises also tested positive for cannabis. Such an argument goes to the proof of the allegations.
Tenant next argues that the petition must be dismissed because "Petitioner did not include the legal or statutory basis for this proceeding in any statement in the Petition, nor any facts creating a cognizable claim" (respondent's memorandum of law in support of motion to dismiss ¶¶12, 34). To the extent that tenant contends that petitioner was required to cite the specific statutory sections that tenant was violating due to the retail sale of cannabis without a license on the tenant's premises, tenant's counsel conceded during oral argument that tenant had cited no precedent for such detailed pleading (FTR, courtroom 772 on December 8, 2023 at 2:37 PM). Had tenant timely answered the petition, tenant could have then served a demand for a bill of particulars for the statutes allegedly violated. In any event, an exhibit annexed to the petition was a letter to landlord from the District Attorney for New York County, which referenced Cannabis Law § 132 (17) and Real Property Action and Proceedings Law § 715-a (2) (NYSCEF Doc. No. 4).
Because the allegations of the petition, when read with petitioner's submissions in opposition, are sufficient to plead illegal use pursuant to RPAPL 715-a (4), this court need not address tenant's remaining arguments as to whether the petition adequately pled illegal use under the law which existed prior to legalization of cannabis in New York State, i.e., whether the petition and the supplemental submissions adequately plead that the unlicensed retail sale of cannabis customarily or habitually occurred on the premises. In any event, those arguments are without merit.
As discussed above, under the law governing illegal use prior to the enactment of the Marihuana Regulation and Taxation Act (MRTA) (L2021 ch 92), an eviction based on use of premises for illegal activity required "something customarily or habitually upon the premises'" (855-79 LLC, 40 AD3d at 555), which tenant maintains was not pleaded. 
Tenant contends that the petition merely alleges "that Respondent has allowed a sublessee to sell marijuana at the Premises by merely asserting Petitioner's representative allegedly purchased marijuana cigarettes from the Premises", that there is "no tangible evidence" that the cigarettes purchased at the premises contained marijuana, and even if they did, such small amounts of marijuana would make it "impossible to find Respondent was conducting an illegal business at the Premises" (respondent's memorandum of law in support of motion to dismiss ¶¶ 31). Tenant relies heavily on the case of Morrisania Apartments LLC v Linton (2013 NYLJ LEXIS 7399, *6 [Civ Ct, Bronx County 2013]). 
Tenant's reliance upon Linton is misplaced. First, the petition here adequately pleads that the premises were used solely or primarily for the unlicensed retail sale of cannabis, pursuant to RPAPL 715-a (4). Second, Linton is inapposite.
In Linton, the landlord commenced an illegal use proceeding to evict a residential tenant at the behest of the Bronx County District Attorney's Office. Although the petition alleged that the tenant had been arrested for criminal possession of marijuana in the fifth degree, and that a police officer had observed the tenant handing a person a clear plastic bag, the exchange had not occurred in the subject apartment at issue. The Housing Court granted the tenant's motion to [*7]dismiss, reasoning, "All the usual indicia of an illegal business or trade are absent in this petition. . . . Indicia of a drug business, with the apartment as the focal point is entirely missing from these pleadings" (id. at *6-7). 
Unlike Linton, the alleged unlicensed retail sale of cannabis occurred on the premises. As discussed above, Glick's affidavit and submissions plead abundant indicia of a retail trade of cannabis occurring on the premises, such that tenant should have known of such activities on the premises (WHGA Renaissance Apts., 53 Misc 3d at 12).
Tenant's counsel also appears to argue that, given that the MRTA reduced the criminal penalties for the sale of cannabis, any use of the premises for the unlicensed sale of cannabis cannot constitute tenant having engaged in an "illegal trade" for purposes of Real Property Law § 231 (1) (memorandum in support ¶¶ 35-41). 
This argument is without merit. "Illegal use" under Real Property Law § 231 is not limited to violations of the Penal Law (see Metropolitan Fine Arts & Antiques, Inc. v 10 W. 57th St. Realty LLC, 162 AD3d 514, 515 [1st Dept 2018] [leasehold declared void where tenant did not have a current license and permit from the Department of Environmental Conservation to sell elephant ivory]). Nothing in the original enactment of the MRTA indicated that the Legislature intended the MTRA to permit the unregulated, unlicensed retail sale of cannabis. On the contrary, Cannabis Law § 2 states, in relevant part, 
"The intent of this act is to regulate, control, and tax marihuana, heretofore known as cannabis, generate significant new revenue, make substantial investments in communities and people most impacted by cannabis criminalization to address the collateral consequences of such criminalization, prevent access to cannabis by those under the age of twenty-one years, reduce the illegal drug market and reduce violent crime, reduce participation of otherwise law-abiding citizens in the illicit market, end the racially disparate impact of existing cannabis laws, create new industries, protect the environment, improve the state's resiliency to climate change, protect the public health, safety and welfare of the people of the state, increase employment and strengthen New York's agriculture sector."
Indeed, in 2023, the Legislature found that "additional regulations to curb illegal cannabis retail establishments are necessary to fully effectuate the MRTA and ensure that the goals of the MRTA are achieved" (L 2023 ch 56, part UU § 1), and it enacted, among other things, RPAPL 715-a (4), to enable the summary eviction, on the ground of illegal use, tenants whose premises are used "solely or primarily for the unlicensed retail sale of cannabis."
D. Waiver by Acceptance of Rent
As the Appellate Term, First Department explained almost fifty years ago, a landlord cannot waive the illegal use of the premises by accepting rent:
"Clearly, it is the legislative intent that the acceptance of rent by landlord or doing any act constituting waiver will have no effect in a proceeding for eviction based on illegal use, even after knowledge of illegal activities, when the matter relates to a situation [*8]where the legislature has established a public policy and the enforcement of such a waiver would violate the public policy.
Any other construction would make it possible for a willing landlord, greedy for the high rent that can be obtained for illegal use, to repeal the statute or make it legally ineffective"
(Murphy, 83 Misc 2d at 840).
In sum, the branch of tenant's motion to dismiss the petition is denied on the merits.
II. The branch of tenant's motion to vacate its default
As discussed above, tenant failed to rebut the presumption of the validity of the service of the petition and notice of petition. Thus, there is no basis to vacate tenant's default in answering the petition on the grounds of improper service. 
Generally speaking, when a motion to dismiss in a special proceeding is denied, the court has discretion to permit the respondent to answer, upon such terms as may be just (CPLR 404 [a]). Additionally, while not raised by tenant, this court has "the discretionary power to extend the time to plead, or to compel acceptance of an untimely pleading 'upon such terms as may be just,' provided that there is a showing of a reasonable excuse for the delay" pursuant to CPLR 3012 (d) (Emigrant Bank v Rosabianca, 156 AD3d 468, 472 [1st Dept 2017]). When considering whether to grant a defaulting party relief pursuant to CPLR 3012 (d), a court will consider "the length of the delay, the excuse offered, the extent to which the delay was willful, the possibility of prejudice to adverse parties, and the potential merits of any defense" (id.).
As this court had indicated during oral argument, there did not appear from the record any reason to permit tenant to serve and file a late answer. First, tenant's motion to dismiss was untimely made, after the time to answer the petition had elapsed. Second, as landlord's counsel pointed out, tenant did not offer any reasonable excuse for failing to answer (other than lack of proper service) or a meritorious defense. Tenant did not submit an affidavit from someone with knowledge either contesting that the premises were being used primarily for the retail sale of cannabis, or disputing that tenant had no license for such retail sale. Rather than answering the petition, tenant raised legal arguments in a motion to dismiss that were all lacking in merit.
Thus, to the extent that this court has any discretion to permit tenant to answer the petition following denial of its untimely motion to dismiss, leave to serve and file an answer is denied. Permitting tenant to answer would serve no useful purpose (Chickery v Prestige Catering, Inc., 71 Misc 3d 134[A], 2021 NY Slip Op 50361[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2021]).

CONCLUSION
Accordingly, upon the foregoing papers and after hearing oral argument (FTR, courtroom 772, December 8, 2023 at 2:20 
- 2:55 PM), it is hereby ORDERED that the motion by respondent Convenience on Eight Corporation DBA AM PM Market to dismiss the petition, which was also deemed a motion to vacate the default in answering and appearing, is DENIED; and it is further
ORDERED that the parties are directed to appear for inquest in this matter before this [*9]court (Part 121) on January 11, 2024 at 9:30 AM in courtroom 775 at 111 Centre Street, New York, NY 10013. 
This constitutes the decision and order of the court.
Dated: December 21, 2023
New York, New York
ENTER:
_______________________________
RICHARD TSAI, J.
Judge of the Civil Court

Footnotes

Footnote 1: During oral argument, tenant's counsel cited Zuckerman v City of New York (49 NY2d 557, 563 [1980]) for the proposition that the affirmation of tenant's counsel could be used to put forth statements from an individual with personal knowledge on behalf of tenant, as "admissions of a party made in the attorney's presence." As the court explained during oral argument, tenant's out-of-court statements to his own attorney, who is not offering the statements against tenant, would not constitute admissions (Guide to NY Evid rule 8.03, Admission by a Party). Therefore, the out-of-court statements that tenant allegedly made to his own attorney would be hearsay.